**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                                      :
**JOHN DENBY**                               :
                                                      :    **CIV. NO. 3:02-CV1143 (JBA) (JGM)**
**VS.**                                           :
                                                      :
**COMMISSIONER OF CORRECTION**   :    **December 6, 2004**
_____:

<u>**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER's**</u>
<u>**28 U.S.C. § 2254 PETITION FOR WRIT OF HABEAS CORPUS**</u>

A state court convicted John Denby of possession with intent to sell narcotics by a non-drug dependent person despite the availability of overwhelming evidence that he was, in fact, drug dependant at the time of the offense.  Being convicted as a non-drug dependent offender unquestionably has led to a harsher sentence for Denby – his sentence exceeds what he could have received if convicted of the same crime as a drug dependent person.

He seeks habeas corpus relief from this Court under 28 U.S.C. § 2254.  Denby's Sixth Amendment right to effective assistance of counsel was violated at his criminal trial and because he was drug dependent, therefore, he was actually innocent of the crime for which he was convicted – possession with intent to sell narcotics by a person who was <u>not</u> drug dependent.  His counsel utterly failed to appreciate the importance of showing that Denby was drug dependent, and ignored much of the voluminous evidence of drug dependency available to him.  Accordingly, this Court should conditionally grant the writ, subject to the state proceeding to a new trial within a reasonable time.

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Criminal Trial

Denby was the defendant in State v. Denby, CR–92-0356145, in the Superior Court for the Judicial District of New Haven.  On December 7, 1992, a jury convicted Denby under two Connecticut drug laws: 1) possession of narcotics with intent to sell by a person *who is not drug dependent* ["possession with intent" charge][1], and 2) possession of narcotics within intent to sell within 1000 feet of a school ["school charge"][2].  Drug dependency was a defense to both charges in 1992.  See State v. Hart, 221 Conn. 595, 607-11, 605 A.2d 1366 (1992) (drug-dependent defendant exempt from liability under § 21a-278 by proving drug dependency by preponderance of  evidence); State v. Fernandez, 76 Conn. App. 183, cert. denied, 264 Conn. 901 (2003)(same).

In 1992, the possession with intent charge carried a five-year mandatory minimum sentence, with a maximum of 20 years.  At the time, the school charge only applied to defendants who were not drug dependent, was contingent on the possession with intent charge, and carried a mandatory three-year sentence consecutive to whatever sentence was imposed for the possession with intent charge.  Upon proof of drug dependency, the maximum sentence for possession of narcotics with intent to sell, was 15 years, with no mandatory minimum.[3]  Accordingly, for a non-drug dependent defendant charged with selling drugs within 1500 feet of a school, the

---

[1] Connecticut General Statutes § 21a-278(b) (1990).
[2] Connecticut General Statutes § 21a-278a(b) (1990).
[3] Connecticut General Statutes § 21a-277 (1990).  This crime is a lesser included offense under 21a-278b if the defendant is found to be drug-dependent. See State v. Bradley, 60 Conn. App. 534, 545, cert. denied, 255 Conn. 921 (2000).

statutes carried maximum penalties of 23 years, of which eight were mandatory.  For a drug dependent defendant, the maximum was 15 years, with no mandatory minimum.

The primary evidence offered against Petitioner at trial was the testimony of two police officers.  They testified they witnessed and heard Petitioner make what they believed to be two drug sales on a porch of a house in New Haven.  The officers testified that they then approached the house, and chased down Petitioner as he rapidly entered the house.  Subsequently, in the hallway, on the person of petitioner, the police said that they found a substance later confirmed to be cocaine.[4]  (TT (12/2/92) Muro p. 117-220); (TT (12/3/92) Carusone, p. 8-94).[5]

The petitioner testified at trial that he had been inside the house the whole time watching television, that the police came in and searched him, and that he did not have anything in his pockets. (TT (12/4/92) p. 203-354; 1HT (10/24/96), p.37-40, 45)[6].  Nine witnesses testified they

---

[4] The facts as stated by the Connecticut Appellate Court: "On May 17, 1992, New Haven police officers Andrew Muro and Peter Carusone were working in the Newhallville section of New Haven. Muro received information from an informant that the defendant was selling drugs at 51 Lilac Street, which was approximately 820 feet from the Lincoln Bassett School. He and Carusone, both of whom knew the defendant, drove by the address and saw the defendant on the front porch. They set up a surveillance of the defendant's activities. Muro watched the front porch from a nearby alley. Carusone remained at a police substation parking lot, ready to assist Muro upon apprehension of the defendant."

"Muro observed a female walk up to the porch of the building and heard her say she 'wanted one.' The defendant reached into his right pants pocket, pulled out a clear plastic bag, removed an item from it, and handed it to the female. The female then gave the defendant money. A short time later, Muro saw the defendant carry out a second transaction with another individual [which was] similar to the previous transaction.

"After informing Carusone of his observations, the officers returned to the premises under surveillance where Muro encountered the defendant in the hallway and arrested him. In his right pocket, the defendant had a clear plastic bag containing packets of white powder that field-tested positive for cocaine." State v. Denby, 35 Conn.App. 609, 612 (1994).

[5] TT references the trial transcript, on the various dates specified (Exhibit 1 Appendix).  NOTE:  The first page of the Appendix contains a Table identifying the abbreviations used for the various exhibits referenced herein and contained in full in the Appendix.

[6] 1HT is the First Habeas Transcript (Exhibit 2 Appendix).

were in the same house and that the police came in and searched Denby and others and did not see the police find drugs on Denby.[7] Furthermore, petitioner testified that, having daily abused drugs since he was a teenager, he was a drug dependent person, including at the time of the alleged crimes. (TT (12/4/92) p. 296-302); (1HM (11/4/96), p. 2)[8]; (1HT (10/24/96) p. 28-39). Only one additional witness, Willie Garvin, testified that petitioner was a long-term drug abuser. (TT (12/3/92) p. 162-167);(1HM (11/4/96), p. 2); (1HT (10/24/96), p. 42-44).

Petitioner's trial counsel, Attorney Donald Dakers, had considerable criminal experience, but had handled only one or two drug cases prior to petitioner's trial (1HT (10/25/96), p. 23). He did not put on any additional witnesses or introduce any medical, hospital, or Department of Correction  (DOC) records to prove petitioner's long term drug abuse.  Dakers did not have petitioner examined by a scientific expert or drug counselor to establish drug dependency.

The State contested drug-dependency.  The State cross-examined the defense witnesses on drug dependency and argued that Petitioner was not drug dependent (TCA (12/7/92) 20-30, 53, 58-59), but it offered no evidence of its own on the issue.[9]  Both sides vehemently argued the issue of drug dependency to the jury (TCA (12/7/92), p. 21-29, 42-43, 53-54, 95-96).  The trial court instructed the jury that it was required to make a finding whether Petitioner had proved by

[7] These witnesses were: 1) George Kelly (TT (12/3/92) p. 110-137); 2) John Pickett (TT (12/3/92), p. 138-152; 3) Willie Garvin (TT (12/3/92) p. 153-162, 174-181); 4) Marguett Watson (TT (12/4/92) p. 183-201); 5) Walter Wilkins (TT (12/4/92) p. 201-214); 6) Lonnie Chapman (TT (12/4/92), p. 214-228); 7) Lester Moore (TT (12/4/92) p. 229-262); 8) Frank Newton (TT (12/4/92) p. 262-276); 9) Daniel Sullivan (TT (12/4/92) p. 276-287).
[8] 1HM is the First Habeas Memorandum of Decision (Exhibit 3 Appendix).
[9]  TCA references the trial closing arguments (Exhibit 4 Appendix).

a preponderance of the evidence that he was drug dependent, and the legal effect of such a

finding. (TT (12/6/92), p. 79-84, 88-89, 93-94).

The jury convicted petitioner on both charges on December 7, 1992.  The court sentenced

him to sixteen years on the possession with intent charge, plus the three mandatory consecutive

years on the school charge, for a total of nineteen years.  His conviction was affirmed by the

Connecticut Appellate Court and Supreme Court.[10]   Denby's sentence is four years longer than

the maximum sentence he could have received if the jury had found him drug-dependent.

    B.    **First State Habeas**

        1.    **Evidence Presented**

Through Special Public Defender James Shanley, in May 1995 Denby pursued a habeas

petition  ("First Habeas") on the grounds of ineffective assistance of his trial counsel (Dakers),

and for juror misconduct.[11]

At the First Habeas hearing, Dakers testified that he was aware Denby had been charged

as a "non-drug dependent" person. (1HT (10/25/96), p. 26).  Dakers testified he believed Denby

was drug dependent at the time. (1HT (10/25/96), p. 39).  Dakers testified that he did not

emphasize a drug dependency defense because he had an "erroneous" view of the law (1HT

---

[10] State v. Denby, 35 Conn.App. 609 (1994).  Certification to the Connecticut Supreme Court was granted on the limited issue of whether Denby had to have the specific intent to sell within 1000 feet of school in order to be convicted under 21a-278a(b).  See State v. Denby, 235 Conn. 477 (1995).  The Connecticut Supreme Court answered in the negative, finding that the State need not prove that the defendant had knowledge his location of selling narcotics was in the school zone, but rather, that the State need only prove the location at which the defendant sold the drugs was within the school zone.  235 Conn. at 482-483.
[11] The juror misconduct charge was decided against petitioner in the First Habeas and was abandoned in the Second Habeas.

(10/25/96), p. 28-30). Dakers testified that he would have viewed drug dependency as "more essential" to the case had he known the difference. (1HT (10/25/96), p. 28-30). Dakers testified that it was his "obligation" to know the penalties, and that if he had been aware of the penalty distinction, he would have sought a plea, highlighted Denby's drug dependence and called an expert regarding Denby's drug dependence. (1HT (10/25/96), p. 39 & 52-53).

Dakers testified that while he did not recall discussing drug dependence as a strategy or defense with petitioner (1HT (10/25/96), p. 260-27). Had he understood about the additional exposure if convicted as non-drug dependent, he would had discussed it with petitioner and considered different trial tactics. (1HT (10/25/96), p. 41).

Dakers testified that he did not remember petitioner asking him to subpoena records to show that he was drug dependent, but it may have occurred. (1HM (11/4/96), p.2). Denby testified that he told Dakers to get the records during or after jury selection (1HT (10/24/96), p. 47-48) and also during the trial. (1HT (10/24/96), p. 50). Dakers first testified that he didn't remember petitioner requesting him to get any drug-related records, and then testified he remembered something about drug related "jail records" but in any event failed to obtain them for trial. (1HT (10/25/96), p. 27, 40).

First Habeas counsel Shanley did not review the statutory criteria for establishing drug dependency prior to the First Habeas Hearing. (2HT (11/6/98), p. 77).[12] Shanley presented neither a legal expert to establish that Dakers' conduct fell below the standard for Connecticut

---

[12] 2HT references the Second Habeas Transcript (Exhibit 5 Appendix).

criminal defense attorneys and what that standard was, nor a scientific expert to establish that the petitioner was in fact drug-dependent at the time of the offense.  (2HT (11/6/98), p.79-81).  Shanley presented only two witnesses: Denby and Dakers.

### 2.    First Habeas Memorandum of Decision

The First Habeas petition was denied in November 1996.[13]  See First Habeas Memorandum of Decision (Appendix, Exhibit 3). In the Memorandum of Decision, the court highlighted and reviewed some of the testimony of the witnesses but did not make any specific findings of fact as to credibility of witnesses, or undertake any meaningful analysis.  The sum of the court's legal conclusions, without analysis, on the ineffective assistance of counsel claim provided:

> After hearing the evidence this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated September 20, 1996.  He has not proved that his counsel's representation of him was deficient.  Further he has not proved that he was prejudiced by his attorney's representation of him.

(1HM, p. 5).

The First Habeas denial was summarily affirmed by the Connecticut Appellate Court,[14] and certification to the Connecticut Supreme Court was denied.[15]

### C.    Second Habeas Petition

---

[13] 1HM – First Habeas .Memorandum of Decision (11/4/96) (Exhibit 3 Appendix); Judgment (11/4/96).
[14] Denby v. Commissioner, 47 Conn. App. 931 (1998).
[15] Denby v. Commissioner, 244 Conn. 909 (1998).

The petitioner obtained new counsel, Assistant Public Defender James Streeto, and filed a second habeas petition on May 4, 1998, on the grounds of ineffective assistance of trial counsel and ineffective assistance of habeas counsel ("Second Habeas").[16]

### 1.      Second Habeas Evidence

**Denby's Testimony about Drug Dependence**

At the Second Habeas hearing, petitioner testified that in 1992 he was abusing $100-200 worth of illegal drugs each day, equivalent to 10-20 pipefuls of crack, or 2-3 bags of marijuana (2HT (11/4/98), p. 75-6).  Denby testified that he had been using drugs since he was 14 or 15 years old, in 1969-70. (2HT (11/4/98), p. 76).   Denby testified at length how the drugs affected him adversely. (2HT (11/4/98), p. 76-82).  Denby testified he was off the drugs and in treatment when in prison, but went right back to abusing drugs in 1986 when released from jail. (2HT (11/4/98), p. 77-78).

**Testimony About Drug Dependency Defense by Dakers**

In the Second Habeas, trial counsel Dakers again admitted that he did not know the penalties for the charges at the time of the trial. (2HT (11/4/98) p. 61-62, 80, 84-85).

---

[16] In Connecticut, a habeas petitioner has the right to the effective assistance of habeas counsel as well. Lozada v. Warden, 223 Conn. 834, 840 (1992). The Strickland standard applies to a claim of ineffective assistance of habeas counsel.  Iovieno v. Commissioner of Correction, 242 Conn. 689, 694, 703-04 (1997).   To succeed on a second bid for a writ of habeas corpus, the petitioner must prove (1) that his trial counsel was ineffective and (2) that his habeas counsel was ineffective. Lozada, 223 Conn. at 842). "The second habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement." Id., 843.  The evidence adduced at the Second Habeas hearing is included herein to apprise the court of the information that was available for trial counsel to present on the issue of petitioner's drug dependency.

Dakers testified he met with Denby "several times" *before* trial. (2HT (11/4/98), p. 76).

Denby testified that he met with Dakers once or twice *prior* to trial, and told him that should get

Yale hospital and prison records relating to drug dependence, but Dakers told him the charges

carried the same amount of prison exposure so drug dependence did not matter. (2HT (11/4/98),

p. 103-04).

Denby testified that he informed Dakers of evidence of drug dependence in various

records *during* the trial, but again Dakers told him it did not matter because the sentences were

the same. (2HT (11/3/98), p. 73).

Dakers testified that he did appreciate that drug dependency was an issue under both

charges. (2HT (11/3/98), p. 62). Dakers testified that he understood that a person could not be

convicted of the school charge at the time if you were drug dependent and drug dependency was

relevant to Denby's defense. (2HT (11/3/98), p. 61-62). But Dakers conceded that he never

asked petitioner much about his drug abuse. (2HT (11/4/98), p. 120-121). Dakers never had

petitioner evaluated for drug dependency, and he did not offer any prison or medical records.

(2HT (11/4/98), p. 74-75). Dakers admitted he never questioned Denby about the DSM criteria.

(2HT (11/3/98), p. 63-64). Dakers recalled that Denby did inform him there may be some

helpful records to establish drug dependence, but that Dakers never obtained them. (2HT

(11/3/98), p. 64-65). Dakers did not recall Denby telling him about the records before trial, and

believed if Denby had asked him to do so, he would have obtained them. (2HT (11/3/98), p.78-

79). Dakers testified that he would "certainly have had" petitioner Denby examined by a

certified drug and alcohol counselor if Dakers had understood the difference in penalties of the charges. (2HT (11/3/98), p. 65).

Dakers' stated trial strategy was to defend in the alternative: Denby did not possess narcotics; but if he did, he was drug dependent. (2HT (11/3/98), p. 67). Denby testified that his primary defense at trial was that he was innocent, (2HT (11/4/98), p. 105), but that he also had defense of being drug dependent. (2HT (11/4/98), p. 108-111, 115, 116).

Denby was able to supply Dakers with about ten witnesses to support his first defense (of innocence). (2HT (11/3/98), p. 77). Dakers testified that he probably could have established Denby's first defense (of innocence) without Denby's testimony. (2HT (11/3/98), p. 68).

Dakers did not recall petitioner being interested in a plea bargain (2HT (11/3/98), p. 76). Dakers did not recall ever talking to the prosecution about a plea bargain because he believed Denby wanted to go to trial. (2HT (11/3/98), p. 84). At trial, Dakers admitted that he concentrated on the first defense (of innocence). (2HT (11/3/98), p. 79, 81).

Dakers testified that he would *not* have needed Denby's testimony to establish his second defense (of drug-dependence) if he had a drug dependency expert. (2HT (11/3/98), p. 67). Dakers could not recall if he reviewed the statutory criteria for drug dependency at the time of trial. (2HT (11/3/98), p. 85). Yet he claimed that he "absolutely" knew that drug dependency was an "important" issue and that petitioner would get sentenced to an additional three years if he was convicted. (2HT (11/3/98), p. 86).

**Robert Sant'Angelo's Testimony During The Second Habeas Hearing**

A State of Connecticut licensed drug counselor, Robert Sant'Angelo, interviewed Denby while incarcerated in September 1998, and reviewed among other documents, a substance abuse assessment from 1993 where it was determined by a Connecticut certified drug and alcohol counselor that Denby was chemically dependent. (2HT (11/4/98), p. 8-10).[17]  Sant'Angelo testified that, just from his review of Denby's records, Denby met two criteria for drug dependence of the Diagnostic and Statistical Manual of Mental Disorders, 4th ed. ("DSM"): 1) continuing to seek drugs despite adverse consequences in his life, and 2) drugs affected his life. (2HT (11/4/98), p. 14).[18]  If Denby met one additional criteria of DSM, Sant'Angelo would

---

[17] This record (Exhibit 6 Appendix) (marked as Petitioner's Exhibit 10 at the Second Habeas hearing [Walker Reception Center –Addiction Services – Substance Abuse Clinical Assessment Summary]) contained an analysis by an expert establishing petitioner's drug-dependency in February of 1993, only nine months after petitioner's arrest. The expert, a certified alcohol and drug counselor, rated the petitioner as having an extreme problem with drugs, awarding him nine points on a scale of one to nine for drug-dependency. This evaluation supported Sant'Angelo's conclusion finding that the petitioner was strongly drug-dependent in 1992, in 1993, and was still drug-dependent at the time of Sant'Angelo's evaluation.  Other records supporting Petitioner's claim of long term drug dependence reviewed and that could have been introduced include Petitioner's records form the Department of Corrections File (Exhibit 8 Appendix)(marked Petitioner's Exhibit 8 at Second Habeas), the Addiction Services Report (Exhibit 9 Appendix)(marked Petitioner's Exhibit 10 at Second Habeas), and Department of Probation presentence investigation report (Exhibit 12 Appendix)(marked Petitioner's Exhibit 7 at Second Habeas) .

[18] In 1992, Connecticut defined a "drug-dependent person" as "any person who has developed a state of psychic or physical dependence, or both, upon a controlled substance following administration of that substance upon a repeated periodic or continuous basis. No person shall be classified as drug dependent who is dependent (A) upon a morphine-type substance as an incident to current medical treatment of a demonstrable physical disorder other than drug dependence, or (B) upon amphetamine-type, ataractic, barbiturate-type, hallucinogenic or other stimulant and depressant substances as an incident to current medical treatment of a demonstrable physical or psychological disorder, or both, other than drug dependence . . . ."  Connecticut General Statutes (Rev. to 1997) § 21a-240 (19).  In 1997, Connecticut amended the statutory definition of a "drug-dependent person." In its new formulation, a "drug-dependent person" is defined as "a person   who has a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ." Connecticut General Statutes § 21a-240.  The DSM requires a review of several criteria over a *12 month period*. (See Exhibit 6 Appendix attached hereto).  The statute and DSM acknowledge the

consider him chemically dependent. (2HT (11/4/98), p. 15). Sant'Angelo administered the

Substance Abuse Subtle Screening Inventory (SASSI) to Denby on September 11, 1998. (2HT

(11/4/98), p. 16-18. SASSI is over 90% accurate. (2HT (11/4/98), p. 16-18). Sant'Angelo

concluded that Denby was chemically dependent in 1998, based on DSM categories, the SASSI,

and Denby's past history. (2HT (11/4/98), p. 24). Sant'Angelo also concluded that Denby was

drug dependent back in 1992, at the time of the offense, based on his records and history. (2HT

(11/4/98), p. 24).

### Stephanie Pagan's Testimony During Second Habeas Hearing

At the second habeas hearing, Stephanie Pagan, petitioner's girlfriend of some ten years,

testified to petitioner's daily drug use in 1992. (2HT (11/3/98), p. 95). Pagan testified that she

had been living with Petitioner since 1988 and they had five children together. (2HT (11/3/98), p.

100-101). Pagan testified she and petitioner abused drugs together in 1989 and 1990. (2HT

(11/3/98), p. 102.) Pagan testified that when Denby did not have cocaine he was "irate" and

"wasn't himself", but that when he was high, Denby was "calm." (2HT (11/3/98), p. 95). Pagan

testified Denby's drug use increased over time. (2HT (11/3/98), p. 95). Pagan testified that in

1992 Denby spent a lot of time looking for drugs and he stopped participating in social and

recreational activities such as basketball and reading. (2HT (11/3/98), p. 95-96). Denby could

not support Pagan or their children because of his drug addiction. (2HT (11/3/98), p. 101).

---

reality that drug dependence is a long term condition, which develops over time, so that a proper evaluation for drug
dependency requires looking at evidence over time.

Pagan was present during petitioner's 1992 criminal trial but did not testify. (2HT (11/3/98), p. 96-97).  Pagan was not present during the First Habeas hearing. (2HT (11/3/98), p. 97).

### Geraldine Denby's Testimony During Second Habeas Hearing

Geraldine Denby, petitioner's mother, testified at the Second Habeas hearing. She testified that petitioner Denby moved out of her house in 1980 because he was on drugs. (2HT (11/3/98), p. 108).  She testified that petitioner was on drugs in 1992, and had been on drugs since he was 18 or 19. (2HT (11/3/98), p. 110). Geraldine Denby testified that she believed Denby's drug use has increased over the years since he first started. (2HT (11/3/98), p. 113). Dakers spoke to her about Denby's drug use, and she was present during the 1992 criminal trial, but Dakers never called her to testify. (2HT (11/3/98), p. 111-112).  Geraldine Denby was present during the First Habeas hearing, but Shanley never spoke to her about Denby's drug use, and he did not call her to testify. (2HT (11/3/98), p. 112).

### Attorney Shanley's Testimony During Second Habeas Hearing

Attorney Shanley testified he was appointed Denby's First Habeas counsel, as a special public defender, just one month before the hearing. (2HT (11/6/98), p. 51).  Shanley testified he believed the role of habeas counsel is to go with issues identified in the file. (2HT (11/6/98), p. 52-53, 61).  The two issues in the file received by Shanley were 1) ineffective assistance of counsel and 2) juror misconduct. (2HT (11/6/98), p. 51). Shanley testified petitioner was "adamant" those were the issues, so "that's what we did." (2HT (11/6/98), p. 52).

13

Shanley was aware the Public Defender's office had received Denby's authorization for release of certain prison and school records. (2HT (11/6/98), p. 53). Prior to trial, Shanley reviewed a memorandum in Denby's file written by Ian Dodd, investigator for the Public Defender, who informed him that Denby was aware of drug dependency records from Yale Hospital going back to 1976-1977. (2HT (11/6/98), p. 53-54). Shanley chose not pursue the Yale records because "presumably" they would have been irrelevant hospital records. (2HT (11/6/98), p. 53-54; 2HT (11/6/98), p. 81-82). Shanley testified he believed focusing on the drug dependency claims would "almost have been contrary" to the primary argument that trial counsel Dakers rendered ineffective assistance. (2HT (11/6/98), p. 54).

Shanley testified that independent evidence of Denby's drug dependence (aside from his own testimony) was not important because, in his view, the issue was not to prove Denby was drug dependent, but rather, that Dakers was ineffective. (2HT (11/6/98), p. 71-72). Shanley testified that the "prejudice" prong of <u>Strickland</u> required that there would have been a different outcome but for the ineffectiveness of trial counsel Dakers "which would have been Mr. Dakers' objection to have the charge reduced or changed by the jury or alternatively ending up so that he was not found-if he was found guilty of selling it was not as a non-drug dependent person." (2HT (11/6/98), p. 79). Shanley testified that the prejudice to Denby was that he was "subject of being found guilty under [Connecticut General Statutes § 21a-]278b of being a non-drug dependent person." (2HT (11/6/98), p. 96). Shanley testified that if petitioner Denby had not

14

been a drug user, then Denby could have not suffered any prejudice from Dakers' mistake, but even so, Shanley did not feel the need to establish drug dependence. (2HT (11/6/98), p. 97).

Shanley did not review the DSM criteria for drug dependency prior to the First Habeas hearing. (2HT (11/6/98), p. 77). Shanley did not have Denby examined by a drug counselor (2HT (11/6/98), p. 79). Shanley conceded at the habeas hearing that Denby was drug dependent and that there was a record that he was drug dependent. (2HT (11/5/98), p. 79-91).

Shanley possessed a DOC disciplinary report (Exhibit 8 in the Appendix, designated "Petitioner's Exhibit 8" in the Second Habeas) that indicated marijuana was found in petitioner's cell in his previous incarceration, and that petitioner was interested in joining the substance abuse treatment program in 1986, which would have supported petitioner's claim of long term drug addiction and abuse; however, Shanley failed to offer it. (2HT (11/6/98), p. 84).

Shanley testified he met with Denby twice prior to the First Habeas hearing. (2HT (11/6/98), p. 55). Shanley testified Denby did not inform him of any drug-dependence-related records prior to the hearing. (2HT (11/6/98), p.55, 63). Denby testified he told Shanley about the existence of records relating to drug dependence prior to the First Habeas hearing. (2HT (11/4/98), p. 97). Shanley later admitted he received a letter (Exhibit 10 in the Appendix, designated "Petitioner's Exhibit 17" in the Second Habeas hearing) from Denby informing Shanley that there were potentially relevant prison drug records, but Shanley did not obtain them. (2HT (11/6/98), p. 75) Shanley testified that he did not have them because the Public Defender's

office had not previously obtained them. (2HT (11/6/98), p. 75). Shanley testified he could have

subpoenaed the prison records. (2HT (11/6/98), p. 76-77).

Shanley testified his preparation for the First Habeas hearing was that he met with

Denby, obtained certain records[19], met with Attorney Dakers, and also Judge Joseph Clark

(regarding the jury misconduct claim). (2HT (11/6/98), p. 55-56).

In his meeting with Dakers prior to the First Habeas hearing, Dakers "volunteered" to

Shanley "that he did not know the difference between the two statutes and had he known, he

would of [sic] acted differently." (2HT (11/6/98), p. 55). Shanley regarded Dakers' statement as

"an admission on his part of ineffectiveness which he volunteered he felt it was." (2HT

(11/6/98), p. 55-56). Shanley was "sort of giddy with possible success because you don't get

many attorney[s] admitting error to that extent and it seemed to be the main issue to ride." (2HT

(11/6/98), p. 56.) Dakers told Shanley at the meeting prior to the First Habeas hearing that

Denby did not want to settle his case and that his primary defense was innocence and that all of

Denby's requested witnesses were "alibi" witnesses. (2HT (11/6/98), p. 64-65).

Shanley testified Dakers admitted his ineffectiveness as Denby's counsel at the First

Habeas hearing in October 1996. (2HT (11/6/98), p 57-58). At end of Dakers' testimony, the

presiding judge asked Shanley and the prosecutor if there was a possibility of settlement

inasmuch as the judge said "this is as close to ineffectiveness that I've heard." (2HT (11/6/98), p.

---

[19] Shanley: "Well, the correction records, the [mittimus], the time sheets, the court records, and the transcripts of his trial. Things of that nature. Attorney Dakers file had been obtained by the Chief Public Defender's Office, so I got that through them." (2HT (11/6/98), p. 55, lines 18-20).

58).  The prosecutor offered to reduce Denby's sentence by 5 years, but Denby ultimately refused to settle. (2HT (11/6/98), p. 58-61).

Shanley did not offer any expert witness testimony at the First Habeas hearing (2HT (11/6/98), p. 79). Shanley testified that trial counsel Dakers did not meet the defense's burden at trial that Denby was drug dependent, yet Shanley admitted that he did not offer in the First Habeas hearing any new evidence of petitioner's drug dependency which was previously found insufficient at trial. (2HT (11/6/98), p. 94-95).

Shanley testified that if he had been the criminal trial attorney he would have asked for a examination for drug dependency under the terms of Conn. Gen. Stat. §§ 17a-694 to 17a-696 (called a CADAC examination)[20] and have had Denby tried and potentially treated as drug-dependent. (2HT (11/6/98), p. 98-99; 103).  Shanley testified the normal procedure in criminal cases was to get a CADAC evaluation to establish whether the defendant was drug dependent at the time of the offense. (2HT (11/6/98), p. 103).  Shanley testified that he knew that Dakers did not have petitioner Denby undergo a CADAC evaluation. (2HT (11/6/98), p. 103).   Shanley did not offer expert testimony at the First Habeas that getting such a CADAC evaluation was the normal pretrial investigation procedure in criminal drug cases. (2HT (11/6/98), p. 103).

---

[20] Under Conn. Gen. Stat. § 17a-694 to § 17a-696, a person charged with certain crimes can seek to be treated for drug dependency either prior to or after conviction.  The statute requires an examination by state authorities to determine whether the defendant was drug dependent at the time of the offense.

**Attorney Louis Avitable's Testimony About Standard Of Care for Criminal Attorneys**

**As to Trial Counsel (Attorney Dakers)**

At the Second Habeas hearing, Attorney Louis Avitable was qualified and testified as an expert witness on the standard of care of criminal attorneys. (2HT (11/6/98), p. 2-36). [21]

Attorney Avitable testified that when drug dependency is an issue in a case, he takes a history from his client and obtains any related records. (2HT (11/6/98), p. 6-7). Avitable also testified that when he has such clients examined by an expert, either a doctor or substance abuse counselor (2HT (11/6/98), p. 8 & 15), in order to "at least investigate and find out whether there is a legitimate claim of drug dependency or not." (2HT (11/6/98), p. 15).

Avitable testified having such an expert testify at trial is much more advantageous than having just the defendant testify because an expert's testimony based on scientific determinations and carry more weight with the jury than the defendant's testimony. (2HT (11/6/98), p. 8-9).

Avitable testified that because of Daker's legally erroneous conclusion in the differences in penalties between C.G.S. § 21a-278b and § 21a-277 (and his resulting failure to produce the drug records and present expert testimony), Denby was exposed to 23 years of incarceration, instead of 15. (2HT (11/6/98), p. 10). Avitable testified that such a misunderstanding by Dakers,

---

[21] At the time of the Second Habeas hearing, attorney Avitable had practiced law in Connecticut for over 30 years, appeared as an expert 10 times, completed 98 criminal jury trials, about 70 appeals, and handled 50-75 cases where drug dependence was an issue. (2HT (11/6/98), p. 2-7).

and resulting failure to obtain records, fell below the standard of care for criminal attorneys. (2HT (11/6/98), p. 15-17).

Avitable testified that Dakers' ineffective trial representation rose to the level of prejudice so that the confidence in the jury verdict was undermined. (2HT (11/6/98), p. 17-18). Apart from the likelihood of Denby not being convicted as a non-drug dependent person, in Avitable's opinion that there may have not been a trial at all: if Dakers had done the proper investigation and obtained an expert, the State may have chosen not to pursue a C.G.S. § 21a-278b (non-drug dependent), and allowed a plea bargain on C.G.S. § 21a-277 (drug dependent). (2HT (11/6/98), p. 17).

**Avitable's Testimony As to First Habeas Counsel (Attorney Shanley)**

Avitable also testified that a habeas counsel trying to prove that trial counsel failed to properly establish drug dependency without presenting an expert would also be unsound legal strategy and would be repeating the error of trial counsel. (2HT (11/6/98), p. 11). Avitable testified that the Walker Correctional Institution intake sheet filled out by a certified drug and alcohol counselor, dated February 4, 1993 (Exhibit 6 Appendix), would have been helpful at the First Habeas hearing to establish Denby's drug dependency. (2HT (11/6/98), p. 12-14).

Avitable testified that since Shanley had records of Denby's drug dependency and could have produced an expert based on those records, Shanley's performance as First Habeas counsel fell below the standard of care. (2HT (11/6/98), p. 18 & 20-21). Avitable testified that the witnesses put on by Dakers were insufficient to meet the defendant's burden of proof of drug-

dependency because the jury found him guilty under the non-drug dependent statute. (2HT (11/6/98), p. 19). Avitable testified that First Habeas counsel Shanley did not produce any additional evidence on drug dependence that was already found insufficient at trial, making it was impossible for Shanley to prevail in the First Habeas. (2HT (11/6/98), p. 20). Such prejudice caused by Shanley undermined confidence in the outcome of the First Habeas. (2HT (11/6/98), p. 20).

### b.    Second Habeas Memorandum of Decision

The Second Habeas petition was denied in January 2002.[22] See The Second Habeas Memorandum of Decision  (Exhibit 11 Appendix).  The appeal was denied[23], and certification to the Connecticut Supreme Court was denied.[24]

The Second Habeas court's ultimate legal conclusions were that petitioner failed to establish either unreasonable representation or prejudice, on his ineffective assistance claim (2HM, p. 6-8, 13), and also "failed to make a showing of actual innocence."  (2HM, p.13) As to factual findings, the court made several pertinent to the instant Habeas Petition:

1) the documents and records that trial and First Habeas counsel failed to obtain and/or present were credible on the issue of petitioner's drug dependency:  "The records of

---

[22] The Second Memorandum of Decision will be referenced as 2HM (Exhibit 11 Appendix).
[23] Denby v. Commissioner, 66 Conn.App. 809 (2001).
[24] Denby v. Commissioner, 259 Conn. 908 (2002).

medical evaluations, to be sure, show that petitioner has a long history of drug abuse"

(2HM, p. 7)

2) the petitioner was credible on his drug dependency: petitioner testified "compellingly…

about his long history of problems with drugs and alcohol" (2HM, p. 7)

C.     **This Petition**

Denby filed this petition on July 2, 2002, claiming ineffective assistance of trial counsel, and actual innocence of the crimes for which he was convicted.[25]  Respondent moved to stay or dismiss the petition based upon failure to exhaust state remedies.   On May 6, 2003, this Court (Hon. Janet Bond Arterton, J.) denied the motion to dismiss, concluding that Denby had properly presented his claims to the Connecticut Supreme Court.  The undersigned was lately appointed counsel for petitioner and files this memorandum in support of the petition.

**II.  APPLICABLE LAW AND STANDARD OF REVIEW**

As with all habeas petitions brought after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), a federal court can grant habeas relief in a case "adjudicated on the merits"[26] in a state court proceeding when the

---

[25] Petitioner also claimed ineffective assistance of habeas counsel which claim is abandoned. Coleman v. Thompson, 501 U.S. 722, 755 (1992) ("there is no right to counsel in state collateral proceedings.")

[26] Nothing in the phrase "adjudicated on the merits" requires the state court to have explained its reasoning process. Nowhere does the statute make reference to the state court's process of reasoning.  See Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999). The plain meaning of § 2254(d)(1) controls:  "For the purposes of AEDPA deference, a state court "adjudicates" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in

adjudication "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law as determined by the Supreme Court of the

United States."  28 U.S.C. § 2254(d)(1) (2003); see also Williams v. Taylor, 529 U.S. 362

(2000).  This Court must determine whether the state court's denial of relief rested upon an

unreasonable application of Strickland, which is the relevant "clearly established federal

law" for an ineffective assistance of counsel Sixth Amendment claim.[27]  See Aparicio v.

Artuz, 269 F.3d 78, 94 (2d Cir. 2001).  The test for ineffective assistance of counsel

established in Strickland[28] requires a defendant to show that counsel's performance "fell

below an objective standard of reasonableness" and that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 688, 694.[29]  To determine that the state court applied Strickland in an

---

the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Sellan v. Kuhlman, 261 F.3d 303, 311-312 (2d Cir. 2001).  This court already has ruled that petitioner exhausted his claims.

[27] The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[28]  This two-prong test applies to the performance of appellate counsel as well as trial counsel. Aparicio, 269 F.3d at 95 (citing Evitts v. Lucey, 469 U.S. 387, 396-97 (1985)).

[29] In determining the existence of prejudice, the court "must consider the totality of the evidence before the judge or jury."  Strickland, 266 U.S. at 694.  "In other words, this Court must attempt to recapture mentally all the evidence that weighed in favor or against [Petitioner] in the mind of [trier of fact]. Then this Court must alter the "evidentiary picture" by imagining what it would have been in the absence of ineffective assistance of counsel.  Id.  This means determining what factual findings were affected by the attorney's errors and to what extent they were affected.  Id."  Morrison v. Kimmelman, 650 F. Supp. 801, 808  (D.N.J. 1986)  "In sum, we should conceptualize the evidence as it

---

unreasonable manner, the court must find that there was "'some increment beyond error.'"
See Eze v. Senkowski, 321 F.3d 110, 124-25 (2d Cir. 2003) (quoting Francis S. v. Stone, 221
F.3d 100, 111 (2d Cir. 2000)); Lindstadt v. Keane, 239 F.3d 191, 205 (2d Cir. 2001) (state
court decision to deny ineffective assistance claim was unreasonable when Strickland prongs
had been met).

    The right to counsel is "the right to *effective* assistance of counsel." McMann v. Richardson,
397 U.S. 759, 771 n.14 (1970) (emphasis added).   The Supreme Court has explained that in
giving meaning to this requirement a reviewing court must be guided by its purpose -- "to ensure
a fair trial" -- and that therefore the "benchmark for judging any claim of ineffectiveness must be
whether counsel's conduct so undermined the proper functioning of the adversarial process that
the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

    The court must also keep in mind that "a verdict or conclusion only weakly supported by
the record is more likely to have been affected by errors than one with overwhelming record
support." Strickland, 466 U.S. at 696.  "The result of a [criminal] proceeding can be rendered
unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown
by a preponderance of the evidence to have determined the outcome." Purdy v. Zeldes, 337 F.3d
253,  260 (2d Cir. 2003) (quoting Strickland, 466 U.S. at 694). Ineffective assistance may be
demonstrated where counsel performs competently in some respects but not in others.  See Eze,

---

actually was, adjusted to compensate for attorney errors, but we should assume a decisionmaker, not necessarily as
he actually was, but as he should have been." Kimmelman, 650 F. Supp. at 808.

321 F.3d at 112.  For example, even if a single error did not constitute ineffective assistance, prejudice can arise from the cumulative impact of multiple deficiencies.  Cooper v. Fitzharris, 586 F.2d 1325, 1333 (9th Cir. 1978).  However, even a single, serious error may support a claim of ineffective assistance of counsel.  United States v. Cronic, 466 U.S. 648, 657 n.20 (1984).

Counsel's competence, however, is presumed, Strickland., 466 U.S. at 689, and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  Id. at 688-89.  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.  Id. at 689.  In making the competency determination, the court "should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."  Id. at 690. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, "*counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.*"  Id. at 691 (emphasis added).

Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert on a disputed issue cannot have been based on strategic considerations and will thus be subject to review under Strickland's prejudice prong. See Pavel v. Hollins, 261 F.3d 210, 223 (2d Cir. 2001) (counsel ineffective in a

child sexual abuse case where his failure to call a medical expert was based on an insufficient

investigation); Lindstadt, 239 F.3d at 201 (same).  "Constitutionally adequate assistance of

counsel includes competent pretrial investigation."  State v. Clark, 170 Conn. 273, 284, cert.

denied, 425 U.S. 962 (1976).  Failure to conduct an adequate investigation is not a matter of trial

tactics but rather prevents counsel from making an informed trial strategy.  Siemon v. Warden,

184 Conn. 547, 557 (1981).

     Determination of factual issues made by a state court "shall be presumed to be correct,"

and the applicant "shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1).  However, "even in the context of federal habeas,

deference does not imply abandonment or abdication of judicial review ... A federal court can

disagree with a state court's credibility determination and, when guided by AEDPA, conclude the

decision was unreasonable or that the factual premise was incorrect by clear and convincing

evidence." Shabazz v. Artuz, 336 F.3d 154, 161 (2d Cir. 2003) (quoting Miller-El v. Cockrell,

537 U.S. 322, 340 (2003)).

     Although the underlying historical facts found by the habeas court may not be disturbed

unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's

rights under the Sixth Amendment "is a mixed determination of law and fact that requires the

application of legal principles to the historical facts of this case." Cuyler v. Sullivan, 446 U.S.

335, 342 (1980).  As such, that question requires plenary review unfettered by the "clearly

erroneous" standard. Id.; see also Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000)

("Whether a defendant's representation "'violates the Sixth Amendment right to effective

assistance of counsel is a mixed question of law and fact that is reviewed *de novo*.'") (quoting

United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998)), cert. denied, 531 U.S. 956 (2000));

Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir.), cert. denied, 488 U.S. 908 (1988); Government

of the Virgin Islands v. Zepp, 748 F.2d 125, 134 (3d Cir. 1984).

## ARGUMENT

**I.     THE STATE COURT DECISIONS THAT THE PETITIONER'S TRIAL COUNSEL WAS NOT CONSTITUTIONALLY INEFFECTIVE IN FAILING TO PROPERLY INVESTIGATE AND PRESENT EVIDENCE OF DENBY'S DRUG DEPENDENCE DEFENSE RESULTED FROM AN UNREASONABLE APPLICATION OF STRICKLAND.**

### A.     Attorney Daker's Representation At Trial

Attorney Dakers decided to present the defense of drug dependency at the criminal trial.

Dakers testified that drug dependence was one of two alternative defenses he asserted to the

charges against the defendant.  Dakers testified he understood drug dependency was important to

both charges, in particular to the school charge.  However, the only evidence of drug dependency

Dakers offered was the testimony of the petitioner and the testimony of Willie Garvin.  Dakers

"stated he did not pursue drug dependency issue at trial because of his erroneous belief" about

the maximum penalties of C.G.S. § 21a-278b (non-drug dependent) and C.G.S. § 21a-277 (drug

dependent).  (1HM, p. 3)

Once made aware of the differences in the penalties of the statutes, Dakers testified that

he would have pursued a different trial strategy, including having petitioner examined by a drug

counselor.  Attorney Avitable testified that the standard of care for criminal attorneys

representing defendants on such charges was to have the defendant examined for drug

dependency so as to enable the attorney to make an informed choice about defense tactics.

Both Dakers and the State vigorously argued the issue of drug-dependency to the jury.

The trial court instructed the jury that it was required to make a finding whether the petitioner had

proven by a preponderance of the evidence that he was drug dependent.  The jury found the

petitioner had not met this burden, convicting him as a non-drug dependent person.

      1.      ***Strickland* Analysis: Attorney Dakers' Deficient Performance**

Dakers "stated he did not pursue drug dependency issue at trial because of his erroneous

belief" about the maximum penalties of C.G.S. 21a-278b (non-drug dependent possession) and

C.G.S. § 21a-277 (drug dependent possession). (1HM, p. 3). The First Habeas court in its

Memorandum of Decision specifically noted that the Dakers did not recall if Petitioner asked

him to obtain drug-dependency related records "but it may have occurred." (1HM, p. 2).  In

addition, the First Habeas Court found that that Dakers testified that "if the Petitioner asked him

to do so he believes he would have obtained such records." (1HM, p.2).

Based on these facts, the court concluded that Dakers was not ineffective at petitioner's

trial.  That conclusion was an unreasonable application of <u>Strickland</u>.  Dakers' representation

was unreasonable because he failed to conduct proper legal research (to enable him to understand

the charges) and failed to conduct proper investigation of the facts in order to sufficiently

develop a reasonable drug dependency defense for presentation to the trial court – and he plainly

failed to conduct that investigation due to a mistaken understanding of the law.

A trial attorney's duty is to know the relevant law. Reasonable performance of counsel includes an adequate investigation of the facts and law, consideration of viable theories, and development of evidence to support those theories.[30] In order to provide effective representation, an attorney must acquaint himself with the area of law involved "'[which] requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.'" Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (quoting Rule 1.1 of the Connecticut Rules of Professional Conduct) (attorney who failed to do cursory review of the law to acquaint himself with relevant statute which resulted in missed statute of limitations to file habeas petition was unreasonable). A "decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir.) (en banc), cert. denied, 498 U.S. 950 (1990). Counsel has a "duty to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence." Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990). "'It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of

---

[30] See e.g. [ABA Standards, Defense Function] Standard 4-4.1. DUTY TO INVESTIGATE. It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

guilt <u>or penalty</u>.'"  <u>Henderson v. Sargent,</u> 926 F.2d 706, 711 (8th Cir. 1991) (emphasis added)

(quoting <u>Eldridge v. Atkins</u>, 665 F.2d 228, 232 (8th Cir. 1981), <u>cert. denied</u>, 456 U.S. 910

(1982)).

      Dakers admitted he did not know the law – he did not understand that a conviction as a

drug dependent person or as a non-drug dependent person mattered, not only for purposes of the

mandatory minimum but also for the maximum.  Dakers candidly admitted that if he had been

aware of the difference in exposure he would have had the petitioner examined by an expert.

Dakers' own contentions that he was ineffective in misunderstanding the penalties are entitled to

substantial weight.  <u>Dillon v. Duckworth</u>, 751 F.2d 895, 898 (7th Cir. 1984).  Certainly it is not

unreasonable to require an attorney to review the statutes under which a defendant is charged to

understand the elements of the crimes and what penalties may attach.  If "drug dependency" is an

element of the offense, it is incumbent upon the defense attorney to know what constitutes "drug

dependence" under state law.  This is especially true under Conn. Gen. Stat. § 21a-278b, which

places the initial burden on the defendant to establish by a preponderance of the evidence that he

is *not* drug dependent.  If defense counsel fails to do the legal research necessary to understand

the charges against his client, the attorney cannot know what evidence to present to rebut the

State's prima facie case and what trial strategy regarding defenses to choose, or even whether to

go to trial or to plea.

      Although Dakers had been a criminal attorney for many years, he had not handled many

drug cases.  Furthermore, he admitted he did not know the penalties for the crimes charged

against the petitioner.  Attorney Avitable testified without contradiction that this ignorance of the law fell below the standard of care for criminal defense attorneys.

Aside from the threshold obligation of an attorney to understand the crimes involved, an attorney must conduct a reasonable pretrial investigation so as to be able to conceive and execute a reasonable defense plan.  Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum.  Bouchillon v. Collins, 907 F.2d 589, 597 (5th Cir. 1990).  Here, much was made of the fact that Denby may not have "asked" or "told" Attorney Dakers about drug dependence records prior to trial.  But that argument is irrelevant to the issue of whether Dakers did proper pretrial legal research and investigation, leading to a proper legal defense strategy.  Dakers should have obtained the records even without Denby telling him to do so, as well as have Denby examined and assessed for drug dependence, as testified to by Attorney Avitable.

There would have been nothing inconsistent about presenting evidence of Petitioner's drug-dependency and presenting evidence of Daker's "primary strategy" of Denby's not committing the crime of possession with intent to sell narcotics.  In light of petitioner's unwavering version of being in the house watching a basketball game all evening, backed up by numerous witnesses, and upon Dakers' opinion based upon years of experience that when faced with police office testimony a jury will either find it credible or not, Dakers arguably made a reasonable tactical decision not to call an audiologist, to attempt to discredit the veracity of the

30

police officer's version of events. (2HT (11/4/98), p. 71-72).  That is, Dakers made a reasonable

tactical decision, based upon petitioner's assertion of his innocence and his experience, that his

first line of defense was that Denby did not possess or intend to sell narcotics that night.

However, Dakers admitted the alternative drug dependency defense was "important" in the event

that the jury did not believe petitioner's version of events.  Dakers investigation and presentation

on this second, important alternative defense – of petitioner's drug dependence – was

unreasonable and constituted ineffective assistance of counsel.

　　　　"This is not a case where there were tactical reasons for failing to present available

evidence...." Clabourne v. Lewis, 64 F.3d 1373, 1385 (9th Cir. 1995).  The petitioner "had

nothing to lose by asking the expert witnesses to testify…" Id.  "Describing [counsel's] conduct

as 'strategic' strips that term of all substance." Bloom v. Calderon, 132 F.3d 1267, 1277 (9th

Cir. 1997).  A decision not to present available and compelling evidence that would significantly

reduce sentence exposure – while presenting arguably less compelling evidence on the same

point – does not represent a strategic decision, but rather an abdication of advocacy.  Austin v.

Bell, 126 F.3d 843, 849 (6th Cir. 1997); accord Foster v. Lockhart, 9 F.3d 722, 726 (8th Cir.

1993) ("A tactical decision to pursue one defense does not excuse failure to present another

defense that would bolster rather than detract from [the primary defense].")

> The presumption of reasonable professional conduct, though strong, does not amount to
> blind faith that an attorney reasonably handled his or her client's defense. When the
> record provided no evidence of a reasoned tactical decision by counsel, and when the

> failure to make such a decision could reasonably be regarded as ineffectiveness, the trial court must independently determine whether such a decision was made.

Gray v. United States, 617 A.2d 521, 525 (D.C. 1992); In Re Jones, 917 P.2d 1175 (Cal. l996) (counsel's tactical decision must be scrutinized so as to determine whether the decision was an informed one); State v. Laraby, 842 P.2d 1275 (Alaska App. 1992 ) (where counsel knew enough to file request to charge, failure to object when requested charge not given cannot be considered tactical choice).

Dakers failed to obtain the relevant hospital, medical and DOC records. As noted in Kimmelman v. Morrison, 477 U.S. 365, 385 (1986), the failure to pursue a given trial tactic can stem from a strategic and informed decision made upon proper investigation, or be the consequence of "a startling ignorance of the law." The former constitutes acceptable, even obligatory conduct by counsel because attorneys must pick and choose which claims to make in court. The latter constitutes ineffective assistance of counsel. See e.g., Agan v. Singletary, 12 F.3d 1012 (11th Cir. 1994) (failure of trial counsel to obtain prison medical and military files ineffective); Workman v. Tate, 957 F.2d 1339 (6th Cir. 1992) (failure to contact and call material witnesses constituted ineffective assistance of counsel); Griffin v. Warden, 970 F.2d 1355 (4th Cir. 1992) (same); Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) (same); State v. DeGuzman, 701 P.2d 1287 (Hawaii 1985). Dakers believed Denby was drug-dependent, and had represented Denby before. He should have known there would be prior DOC records that would be helpful to establish petitioner's drug dependency. Denby testified he told Dakers about

the existence of the records, which Dakers did not dispute could have occurred, and which the

First Habeas court specifically noted (1HM,  p. 2).

Furthermore, Dakers should have known, according to the uncontested expert opinion of

Avitable, that the proper investigation of these types of cases was to have the defendant

examined for drug dependency under Conn. Gen. Stat. § 17a-694 et seq.[31]  At the Second Habeas

hearing, Avitable testified that an expert would have been by far the most effective vehicle for

the presentation of the defense, perhaps obviating the need for a trial at all because a credible

claim of drug dependence may have created the possibility of a favorable plea bargain.  He also

noted that a doctor or drug counselor's expert opinion would normally carry much more weight

than the defendant's testimony at trial, and, as such, it is significantly advantageous to use such

an expert.

Additionally, an expert can testify as to tests, unsuccessful treatment attempts, and

medical problems, as the certified drug and alcohol counselor Sant'Angelo did at the Second

Habeas hearing. In contrast, a lay witness, such as a defendant, must necessarily discuss actual

drug use, exposing himself to a blistering cross-examination.  Consequently, the offering of

expert testimony also would have conferred the strategic benefit of enabling Dakers to avoid

calling the petitioner as a defense witness.

Indeed, Dakers admitted he could have probably established petitioner's drug defense

---

[31] Attorney Shanley in the Second Habeas hearing also testified that having the defendant examined by a drug counselor was the proper way to investigate such a case before trial.  (2HT (11/6/98), p. 98-99)

through the use of an expert and spared petitioner taking the stand and subjecting himself to cross-examination.  During cross-examination of the petitioner, the State brought out a previous conviction for selling narcotics, which could not have been introduced into evidence in any other way. (TT (12/3/92), p. 333).

Dakers' representation was unreasonable because he failed to present obvious and available lay witnesses to bolster petitioner's drug dependence defense.  Both Stephanie Pagan, petitioner's live-in girlfriend and mother of his children, as well as petitioner's mother, were available to testify.  Furthermore, Dakers called numerous witnesses who testified that they were present in the house on the night in question who also testified they had known petitioner for years.  Although the record is silent on the issue, it is likely that they could have testified to the issue of petitioner's drug dependency.[32]

The state court's conclusion that Dakers' representation was not ineffective was an unreasonable applicable of <u>Strickland</u>.  The issue in the habeas proceedings was not *whether* Attorney Dakers should have asserted a drug-dependency defense at trial: Dakers *did so*, and the decision to do so has never been challenged by anyone.[33]  Rather, the issue is whether, *once the*

---

[32] Attorney Dakers testified that petitioner arranged to have the ten defense witnesses show up to testify on his behalf. (2HT (11/4/98), p.77). The record is silent as to whether Attorney Dakers met with those witnesses prior to trial. Most of the witnesses testified that they were asked to testify by petitioner Denby, not Attorney Dakers.

[33] The Second Habeas court's conclusion that "at the first habeas trial, the petitioner's trial counsel testified that he had no recollection of any discussion with the petitioner about a trial strategy that would have attacked the claim that the petitioner was non-drug dependent" (2HM (1/6/00), p. 8), is severely flawed.  As noted above, trial counsel Dakers put on evidence of drug dependency (through the testimony of petitioner Denby and Willie Garvin), argued drug dependency to the jury, and listened while the judge charged the jury to make a finding on drug dependency. While Attorney Dakers may not have remembered a discussion on drug dependency with Petitioner as he testified in

34

*decision to assert this defense at trial had been made*, it was asserted *effectively*.  An attorney

must investigate enough to make a reasonable decision not to investigate further:  "Here it was

not a reasonable strategy which led counsel not to investigate, but lack of thoroughness and

preparation."  Kenley v. Armontrout, 937 F.2d 1298, 1308 (8th Cir. 1991).

      The federal courts have overwhelmingly held that the failure to investigate potentially

helpful evidence once it is brought to an attorney's attention constitutes ineffective assistance of

counsel:

> The most able and competent lawyer in the world cannot render effective assistance in
> the defense of his client if his lack of preparation for trial results in his failure to learn
> of readily available facts which might have afforded his client a legitimate justiciable
> defense.

Goodwin v. Swenson, 287 F. Supp. 166, 182-83 (W.D.Mo. 1968).  See also Pavel, 261 F.3d at

223 (counsel ineffective in child sexual abuse case where his failure to call medical expert was

based on insufficient investigation); Lindstadt, 239 F.3d at 201 (same); Foster v. Lockhart, 9

F.3d at 726 ("although we generally give great deference to an attorney's informed strategic

choices, we closely scrutinize an attorney's preparatory activities"); Caro v. Calderon, 165 F.3d.

1223, 1226 (9th Cir. 1999), cert. denied, 527 U.S. 1049 (2000) ("counsel have an obligation to

conduct an investigation which will allow a determination of what sort of experts to consult");

Tucker v. Prelesnick, 181 F.3d 747, 754-56 (6th Cir. 1999) (failure to obtain witness' medical

---

the Second Habeas hearing, there must have been some discussions because drug dependency because Attorney
Dakers also testified that drug dependence was his secondary defense, and the trial record bears out that it was a
major issue in the 1992 trial. Furthermore, Attorney Shanley was ineffective in failing to bring these facts out in the
First Habeas.

records not part of any conceivable sound trial strategy); <u>Smith v. Stewart</u>, 189 F.3d 1004 (9th

Cir. 1999).

Contrary to the habeas court's conclusion, the introduction of petitioner's drug

dependency would not have undercut the petitioner's primary defense.  Dakers had already

decided to offer evidence of drug-dependency and to argue the point to the jury – and he did so.

Having already admitted to a long history of narcotics use, Denby assumed the risk of

association with drugs in exchange for a reduced exposure.  Petitioner's case could not have been

damaged in any way by the testimony of an expert.  Rather, an expert would have bolstered his

case on his primary defense, by eliminating the need for petitioner to testify.

In conclusion, Attorney Dakers' representation of petitioner at the criminal trial, as it

pertains to investigating, developing and presenting Denby's defense of drug dependence, by his

own admission as well as by the evidence presented at the Second Habeas hearing, was

sufficiently deficient so as to fall below an objective standard of reasonableness.

2.        ***Strickland***  **Analysis: Prejudice Resuling from Dakers'**
          **Deficient  Performance**

The sentence petitioner received and is now serving is, at a minimum, four years longer

than any he could possibly have received if he had been found drug-dependent – putting aside

whether the sentencing judge would have sentenced him to the statutory maximum if he had

been found to be drug-dependent.  In 1992, if drug dependent, the school charge (with its

mandatory three-year consecutive sentence) would have been inapplicable, and if the jury still

found all other elements proved beyond a reasonable doubt, petitioner could have been convicted

only of the lesser included offense of Conn. Gen. Stat. § 21a-277 with a fifteen year maximum

penalty. Petitioner simply could not have received a nineteen-year sentence if he had been found

drug-dependent. Overwhelming evidence of his drug-dependency existed, but Dakers failed to

obtain that evidence and present it at trial, and there is no sound tactical reason for him not to

have done so. Prejudice is therefore clearly established. Glover v. United States, 531 U.S. 198,

203 (2001) ("Authority does not suggest that a minimal amount of additional time in prison

cannot constitute prejudice**.** Quite to the contrary, our jurisprudence suggests that any amount of

actual jail time has Sixth Amendment significance.").

Had Dakers presented the overwhelming evidence of drug-dependency available and

used a scientific expert, there is a reasonable probability that that the jury would have rendered a

verdict finding petitioner guilty as a drug-dependent person, see Collier v. Turpin, 177 F.3d

1184, 1202-03 (11th Cir. 1999), and thus only to have committed a violation of § 21a-277.

## II.    THE HABEAS COURT ERRED IN FAILING TO FIND THAT THE PETITIONER IS ACTUALLY INNOCENT OF THE CRIMES WITH WHICH HE WAS CHARGED.

The Connecticut state criminal charges of which the petitioner stands convicted required a

finding of non-drug-dependency beyond a reasonable doubt upon a showing by the defense by a

preponderance of the evidence that petitioner was drug-dependent. See State v. Hart, 221 Conn.

595, 607-11, 605 A.2d 1366 (1992) (drug-dependent defendant exempt from liability under §

21a-278 by proving drug dependency by preponderance of evidence); <u>State v. Fernandez</u>, 76

Conn. App. 183, <u>cert. denied</u>, 264 Conn. 901 (2003)(same).

As demonstrated by the evidence cited in Issue I above, the petitioner was drug-

dependent in 1992. He is therefore innocent of the charges of which he stands convicted, since

they require a showing of non-drug dependency. The Second Habeas court's conclusion that

there was no showing of actual innocence at the Second Habeas is erroneous.

A.  **Relevant Facts**

The facts relevant to this claim have been presented in Issue I.

B .  **The Petitioner has Established his Actual Innocence of the Charges For Which He
    Stands Convicted.**

In the instant case, the petitioner was convicted of two offenses, each of which requires a

finding that he was not drug-dependent. The evidence of the petitioner's drug-dependency

introduced at the Second Habeas hearing was uncontroverted and overwhelming:

- Robert Sant'Angelo, a licensed alcohol and drug counselor, testified to
  petitioner's drug dependency, estimating his drug dependency as "in the nineties"
  on a scale of one to one hundred;

- Petitioner's live-in girlfriend and mother testified to the dramatic impact drugs
  had had on all aspects of his life;

- Medical records documented petitioner's drug dependency and the negative
  effects of drugs on his life for many years prior to his arrest were introduced into
  evidence, which records the Second Habeas court commented "to be sure,
  show[ed] that petitioner had a long history of drug abuse" (2HM, p. 7 - Exhibit 11
  Appendix)

- The Department of Probation concluded he was drug dependent (Exhibit 10 Appendix);

- The Department of Corrections concluded he was drug dependent (Exhibit 8 Appendix);

- An expert evaluation of petitioner for drug-dependency performed within months of his arrest, found him severely drug-dependent, giving him nine points on a nine point scale (Exhibit 6 Appendix)

- The Second Habeas court specifically found that petitioner himself testified "compellingly" about his long term drug dependency. (2HM, p. 7)

In sum, everyone, (including, incidentally, petitioner's trial attorney and First Habeas attorney) as well as the Second Habeas court, consistent with the documentary evidence and lay and expert testimony, were convinced that petitioner was drug dependent, creating a "reasonable probability that, absent [Attorney Dakers' and Attorney Shanley's] errors…the factfinder [jury] would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695.[34]

The petitioner is currently serving a sentence based on two convictions: Possession with Intent to Sell by a Non-Drug Dependent Person, and Possession of Cocaine within 1000 Feet of a School. In both cases, proof of drug dependency would have negated the conviction. The petitioner is currently serving a sentence four years longer than he could have possibly received

---

[34] This is Petitioner Denby's first federal habeas appeal. This is a not an abusive or successive "actual innocence" federal habeas claim "within a narrow class of cases… implicating a fundamental miscarriage of justice," Schlup v. Delo, 513 U.S. 298, 314 (1995), where the petitioner cannot demonstrate cause and prejudice, who must prove that ""it is more likely than not that no reasonable juror would have had him convicted him" in light of newly discovered evidence of innocence." Id. at 332 (O'Connor, J., concurring). The "more likely than not" Schlup standard is higher that the prejudice standard of Strickland v. Washington, 466 U.S. 668, 695 (1984), controlling here, which requires only "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id.

had he been convicted and sentenced as a drug dependent person.  The Court must conditionally

grant the writ unless the State retries Denby within a reasonable time.

THE PETITIONER JOHN DENBY

By _____
    William M. Bloss
    Federal Bar No. ct01008
    Koskoff Koskoff & Bieder, P.C.
    350 Fairfield Avenue
    Bridgeport, CT 06604
    TEL:  203-336-4421
    FAX:  203-368-3244
    email: bbloss@koskoff.com

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on this 6th day of December, 2004, to all counsel of record, as follows:

Jo Ann Sulik, Esquire
Assistant States Attorney
300 Corporate Place
Rocky Hill, CT 06067

_____
William M. Bloss