UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN DENBY,                           :    CASE NO.  3:02CV1143(JBA)(JGM)
     *Petitioner*                        :
                                        :
V.                                    :
                                        :
COMMISSIONER OF CORRECTION,           :    MAY 23, 2005
     *Respondent*                       :

MEMORANDUM OF LAW IN OPPOSITION TO
PETITION FOR WRIT OF HABEAS CORPUS

     This memorandum is submitted in opposition to the application for writ of habeas corpus filed in the above-captioned proceeding.  In this case, the petitioner claims that (1) he was denied the effective assistance of counsel at his 1992-93 criminal trial and (2) he is actual innocent.  For the reasons set forth below, the petitioner is not entitled to federal habeas corpus relief and his petition for writ of habeas corpus must be dismissed.

## I.    PROCEDURAL HISTORY

     This procedural history is compiled from documents forwarded as appendices to the respondent's Answer dated May 23, 2005, as follows:[1]

Appendix A    Decision of the Connecticut Appellate Court on direct appeal; *State v. Denby*, 35 Conn. App. 609, 646 A.2d 909 (1994)

Appendix B    Decision of the Connecticut Supreme Court on direct review; *State v. Denby*, 235 Conn. 477, 668 A.2d 682  (1995)

Appendix C    Decision of the Connecticut Appellate Court on review of the first state habeas court's decision; *Denby v. Commissioner of Correction*, 47 Conn. App. 931, 707 A.2d 1287 (1998) (per curiam)

---

[1]    The petitioner has forwarded copies of the transcript of the 1992-93 criminal trial as Petitioner's Exhibits 1 and 4.  He also has provided the court with copies of the transcripts of his *first* state habeas trial; Petitioner's Exhibits 2A and 2B; and his *second* state habeas trial; Petitioner's Exhibits 5A through 5D.

Appendix D    Record on appeal of the decision of the first state habeas court

Appendix E    Decision of the Connecticut Appellate Court on review of the second state habeas court's decision; *Denby v. Commissioner of Correction*, 66 Conn. App. 809, 786 A.2d 442 (2001)

Appendix F    Record on appeal of the decision of the second state habeas court

Appendix G    Petitioner's brief on appeal of the decision of the second state habeas court

Appendix H    Respondent's brief on appeal of the decision of the second state habeas court

Appendix I    Petitioner's reply brief on appeal of the decision of the second state habeas court

Appendix J    Petitioner's petition to the Connecticut Supreme Court seeking discretionary review of the decision of the Appellate Court on appeal from the decision of the second state habeas court

In January 1993, the petitioner was convicted after a jury trial, *Clark, J.*, presiding, of possession of cocaine with intent to sell by a non-drug-dependent person in violation of Connecticut General Statutes § 21a-278(b) and possession of cocaine with intent to sell within one thousand feet of a school in violation of § 21a-278a(b). The trial court imposed a term of imprisonment of nineteen years.

The petitioner appealed. Before the Connecticut Appellate Court, he claimed that "the trial court improperly (1) instructed the jury as to an element of the crime charged, i.e., the intent to sell narcotics within one thousand feet of a school pursuant to General Statutes (Rev. to 1991) § 21a-278a(b), (2) refused to permit the defendant to elicit witness testimony as to his knowledge of the defendant's drug dependency in violation of the

defendant's right to present a defense, (3) instructed the jury regarding the defendant's drug dependency, and (4) permitted the state to impeach the defendant by referring to a prior conviction for conspiracy to sell narcotics." *State v. Denby*, 35 Conn. App. 609, 646 A.2d 909 (1994). On August 16, 1994, the Connecticut Appellate Court affirmed the conviction.

The petitioner next sought discretionary review by the Connecticut Supreme Court. That Court granted review, limited to the issue "Where a defendant has been charged with possession of narcotics with intent to sell, within 1000 feet of a school, in violation of General Statutes §§ 21a-278 and 21a-278a(b), is it an essential element that the defendant has the specific intent to sell within 1000 feet of a school?" *State v. Denby*, 231 Conn. 941, 653 A.2d 823 (1994). On December 5, 1995, the Connecticut Supreme Court affirmed the judgment of conviction. *State v. Denby*, 235 Conn. 477, 668 A.2d 682 (1995).

In May 1995, the petitioner filed a petition for writ of habeas corpus in the Superior Court for the judicial district of New Haven. Appendix __ at 1, 4, and 22. Subsequently, counsel was appointed to represent the petitioner. Eventually, his claims were described in an amended petition dated September 20, 1996. Appendix __ at 4-6. In that petition, he asserted that he had been denied the effective assistance of counsel at his 1993 criminal trial because his attorney: (1) failed to investigate and present evidence of the petitioner's drug dependency and (2) failed to object to communications between the prosecutor and a juror. Appendix __ at 5. After hearing the petitioner's evidence in support of his petition, the state habeas court dismissed the petition in a written memorandum of decision dated November 4, 1996. Appendix __ at 8-19.

3

The petitioner then appealed the state habeas court's decision to the Connecticut Appellate Court. On February 3, 1998, that Court affirmed the judgment of the state habeas court. *Denby v. Commissioner of Correction*, 47 Conn. App. 931, 707 A.2d 1287 (1998) (per curiam). He next filed a petition seeking discretionary review by the Connecticut Supreme Court. That petition was denied on March 17, 1998. *Denby v. Commissioner of Correction*, 244 Conn. 909, 713 A.2d 828 (1998).

In 1997 and 1998, the petitioner initiated three additional state habeas actions. These matters were consolidated. In his amended petitions, the petitioner claimed that he had been denied the effective assistance of counsel in his prior state habeas proceeding and that he was actually innocent of the charged offenses. Appendix F at 10-14. In a memorandum of decision dated January 6, 2000, the second state habeas court dismissed that petition. Appendix F at 16-28. Subsequently, the petitioner filed a petition for certification to appeal which was granted on January 19, 2000. Appendix F at 29-29a.

On November 13, 2001, the Connecticut Appellate Court affirmed the judgment of the second state habeas court. *Denby v. Commissioner of Correction*, 66 Conn. App. 809, 786 A.2d 442 (2001). The petitioner then filed a petition seeking discretionary review by the Connecticut Supreme Court. Appendix J. That petition was denied on January 3, 2002. *Denby v. Commissioner of Correction*, 259 Conn. 908, 789 A.2d 994 (2002).

On July 2, 2002, the petitioner initiated the instant proceeding pursuant to 28 U.S.C. § 2254. In his petition, the petitioner claims that he: (1) was denied the effective assistance of counsel at his 1992-93 criminal trial and at his *first* state habeas proceeding and (2) was "actually innocent" of the charged crimes. *See* Petition at 5-6.

4

## II.    FACTS UNDERLYING THE PETITIONER'S CONVICTION

The petitioner was charged with possession of cocaine with the intent to sell or dispense by a person who is not drug-dependent in violation of General Statutes § 21a-278(b),[2] and of possession of cocaine with the intent to sell within 1000 feet of a school in violation of §§ 21a-278 and 21a-278a(b).[3]

---

[2]    General Statutes § 21a-278(b) provides:

Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years.  The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution.

[3]    General Statutes (Rev. to 1991) § 21a-278a(b) provides:

Any person who violates section 21a-277 or 21a-278, and who is not, at the time of such action, a drug-dependent person, by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278.  To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school.

5

On direct appeal, the Connecticut Appellate Court determined that the jury could have reasonably found the following facts.

> On May 17, 1992, New Haven police officers Andrew Muro and Peter Carusone were working in the Newhallville section of New Haven.  Muro received information from an informant that the defendant was selling drugs at 51 Lilac Street, which was approximately 820 feet from the Lincoln Bassett School.  He and Carusone, both of whom knew the defendant, drove by the address and saw the defendant on the front porch.  They set up a surveillance of the defendant's activities.  Muro watched the front porch from a nearby alley.  Carusone remained at a police substation parking lot, ready to assist Muro upon apprehension of the defendant.
>
> Muro observed a female walk up to the porch of the building and heard her say she "wanted one."  The defendant reached into his right pants pocket, pulled out a clear plastic bag, removed an item from it, and handed it to the female.  The female then gave the defendant money.  A short time later, Muro saw the defendant carry out a second transaction with another individual similar to the previous transaction.
>
> After informing Carusone of his observations, the officers returned to the premises under surveillance where Muro encountered the defendant in the hallway and arrested him.  In his right pocket, the defendant had a clear plastic bag containing packets of white powder that field-tested positive for cocaine.

*Denby*, 35 Conn. App. at 612.

To the charges, the petitioner raised two *inconsistent* defenses.  First, he claimed that he was not in possession of any drugs on the evening of May 19, 1992 and that he had been "framed" by the police.  Next, he claimed that he was drug-dependant.

At the 1992 criminal trial, the petitioner testified in support of his defenses.  He asserted that he arrived at Jack Bellamy's apartment which is located on the first floor of 51 Lilac Street shortly before a basketball game began at 8:00 p.m.  Petitioner's Exhibit 1;

---

Public Acts 1992, No. 92-82, amended this subsection to increase the distance from a school within which the provision applied to 1500 feet.

6

T. (12/4/92)[4] at 302-03, 312.  Upon entering the apartment, he took a seat in the kitchen.

*Id.*  The petitioner stated that he did not go onto the building's porch after he entered the

kitchen and that he never left the kitchen.  *Id.* at 306, 310, 313, 333-34.  Others individuals

were present including George Kelly, Jack Bellamy, "Chill Will," Marquett, and Sonny.  *Id.*

at 302-03.  Others came "in and out" of the apartment during the evening.  *Id.* at 302-03,

307-08.  The petitioner indicated that he had ingested cocaine and marijuana earlier in the

day but did not do so while he was watching the basketball game.  *Id.* at 304.  He further

stated that he did not have any narcotics in his possession when Officers Muro and Pete

entered the kitchen.  *Id.* at 305, 308, 316, 319-20.  The officers "patted him down" but

found no drugs; they took him outside, and put him in a car.  *Id.* at 305, 334-35.  He

claimed that the drugs that were entered as evidence were "planted" on him by the police

or by an informant.  *Id.* at 317, 344.  In fact, he claimed that the police showed him the

drugs while he was in the car.  *Id.* at 344-45.

The petitioner denied ever selling drugs.  Petitioner's Exhibit 1; T. (12/4/92) at 310-

11, 320, 347.  He further denied selling drugs to "maintain his lifestyle" and claimed that

he did "handy work or any kind of work like that to get drugs but [he did] not sell drugs to

maintain my lifestyle."  *Id.* at 321-22, 27.  He admitted that he was convicted of conspiracy

to distribute narcotics in April 1989 but claimed that he was "forced" to plead guilty by the

State.  *Id.* at 327-28.  The petitioner acknowledged that he also was convicted of two

felonies in 1975 and of one felony in each of the years 1976, 1981, and 1983.  *Id.* at 332-

33.

---

[4]    Citations to transcripts will follow the format "T. ([date]) at [page number]."

The petitioner also presented the testimony of *nine* other witnesses who essentially confirmed his version of the events of May 12, 1992. The defense first called George Kelly to testify. Petitioner's Exhibit 1; T. (12/3/92) at 110-37. Kelly testified that he was present at Jack Bellamy's first floor apartment which is located at 51 Lilac Street in New Haven on May 19, 1992. *Id.* at 110. He arrived between 7:30 and 7:45 p.m. Kelly proceeded to watch a basketball game on the television located in the apartment's kitchen. Other individuals joined him, including "Jacky" Bellamy, John Picket, Lonnie Chapman, Marquett, Willie Garvin, J.C., and Sonny and the petitioner. The petitioner arrived shortly after Kelly and never left the kitchen. Eventually, two police officers entered the kitchen. Each officer grabbed one of the petitioner's arms. Kelly stated that the officers searched the petitioner and then "took him." *Id.* at 123. Although Kelly testified that he always told the truth, he admitted that he had been convicted of "falsely reporting an incident to the police." *Id.* at 127-28.

After Kelly concluded his testimony, the defense called John Picket.[5] Petitioner's Exhibit 1; T. (12/3/92) at 138-52. Picket stated that he arrived at an apartment owned by "Jessy" or "Jacky" at 51 Lilac Street around 8:00 p.m., on May 19, 1992. He was there to watch a basketball game on television. Picket stated that two police officers entered the apartment, searched the petitioner, and then took him away.

Next, Willie "Chill Will" Garvin testified that he is the petitioner's brother-in-law and that he arrived at Jack Bellamy's apartment shortly before a basketball game began on

---

[5] Picket admitted that he was under the influence of alcohol at the time that he testified but denied drinking any alcohol on the evening that the petitioner was arrested. T. (12/3/92) at 148-49.

May 19, 1992.  Petitioner's Exhibit 1; T. (12/3/92) at 153-81.  Garvin further stated that the petitioner was present and Garvin never saw him leave.  At some point, Officers Pete Carusone and Muro walked into the apartment.  One of the officers searched Garvin.  When they left, the officers took the petitioner with them.

Marquett Watson then took the stand and testified that she was at 51 Lilac Street visiting Jack Bellamy on the evening of May 19, 1992.  Petitioner's Exhibit 1; T. (12/4/92) at 183-201.  She stated that the petitioner arrived shortly after 8:00 p.m. and remained in Bellany's apartment until two police officers entered, searched the petitioner, and then arrested him.  *Id.*  Watson stated that the only things that the police pulled out of the petitioner's pockets were "some keys and some money, that was about it, that's all I saw and I was right there."  *Id.* at 189.  Next, Walter Williams testified that he arrived at Jack Bellamy's apartment at 51 Lilac Street shortly after 8:00 p.m. on May 19, 1992.  Petitioner's Exhibit 1; T. (12/4/92) at 201-14.  The petitioner already was present when Williams arrived at the apartment and Williams did not see him leave.  Williams explained that three police officers entered the apartment and arrested the petitioner.  The defense then called an individual named Lonnie Chapman who testified that he arrived at Jack Bellamy's apartment around 9:00 p.m. on May 19, 1992.  Petitioner's Exhibit 1; T. (12/4/92) at 21529.  Chapman stated that three police officers came into the apartment and searched the petitioner.  They found "keys and money and stuff" and arrested him.  Chapman testified that the petitioner arrived around 9:30 p.m. and didn't leave the apartment until the police arrested him.

Following Chapman, an individual named Lester Moore testified that he was standing outside of the building in which Jack Bellamy's apartment is located when the

petitioner was arrested. Petitioner's Exhibit 1; T. (12/4/92) at 230-62. Moore stated that the petitioner went into the building "about eight or nine" and did not come out, even to stand on the porch. According to Moore, at a later time, four police officers arrived in one car. Two went around back and two went through the building's front door. Moore then observed the officers bring the petitioner out of the building in handcuffs. Moore admitted that he had been convicted of possession of narcotics and that he had used cocaine regularly in the past. He claimed that he stopped using the substance two years earlier. On cross-examination, Moore acknowledged that he had multiple convictions for possession as well as a conviction for selling cocaine, larceny, and escape.

Next, the petitioner called Frank Newton to testify. Petitioner's Exhibit 1; T. (12/4/92) at 263-76. Newton stated that he was present at Jack Bellamy's apartment at 51 Lilac Street on the evening of May 19, 1992. *Id.* at 263-64. Newton recalled that he was on the porch when four police officers arrived. *Id.* at 265. He then observed the officers bring the petitioner out of the building and put him in the police car. *Id.* at 267. Newton stated that the petitioner had arrived at the apartment shortly before the basketball game began and stayed in the apartment. *Id.* at 273.

Finally, the defense called David Sullivan. Petitioner's Exhibit 1; T. (12/4/92) at 276-87. Sullivan testified that he entered the apartment about "ten-sh" on the evening of May 19, 1992 to check the basketball game score. He saw the petitioner in the kitchen. After he left the apartment, he saw four police officers drive-up in one car. He then saw them approach 51 Lilac Street on foot. Two officers went to the back of the building, while the other two went in the front. He observed that Lester and Newton were on the porch. *Id.* at 280. Three officers then left the building with the petitioner.

10

As for his alleged drug addiction, the petitioner informed the jury that he had used cocaine, marijuana and heroin since leaving high school at the age of 16 or 17. Petitioner's Exhibit 1; T. (12/4/92) at 295-96.  At the time of trial, the petitioner was 36 years old.  *Id.* at 296.  When asked how often he used drugs, the petitioner stated, "anytime I can get it I use it" and that "I use it everyday."  *Id.*  He claimed that he tried to get help through Narcotics Anonymous while he was in prison.  *Id.* at 299-300.  The petitioner *denied* selling drugs and stated that he earned money by doing "handy work or any kind of work like that to get drugs but I do not sell drugs to maintain my lifestyle."  *Id.* at 322, 347.  He denied ever experiencing an "O.D."  *Id.* at 348.  The petitioner admitted that he did not attend a drug program that had been ordered by the parole board.  *Id.*  He claimed that he did not go to the program because if he did "they would find my urine dirty."  *Id.* at 348.  The only treatment he ever received was while he was in prison because he was forced to do so.  *Id.* at 350-51.  He admitted telling a police officer in a sworn statement that he did not use drugs but explained that he did so because "I said it, cause I can't tell no police no shit like that."  *Id.* at 352-53.

The petitioner's brother-in-law, "Chill Will" Garvin, also testified that the petitioner was a "base head."  Petitioner's Exhibit 1; T. (12/3/92) at 165.  A "base head" is a person who smokes coke all the time.  *Id.*  Garvin and the petitioner would use cocaine together. *Id.* at 165-67.  Garvin was convicted of possession of narcotics with intent to sell in April 1992.  *Id.* at 172.  He also had been convicted on multiple occasions on larceny charges. *Id.* at 173-74.

### III.   ARGUMENT

In his petition to this Court, the petitioner claims that his state conviction is unlawful because he: (1) was denied the effective assistance of counsel at his 1993 criminal trial and at his 1996 habeas proceeding and (2) was "actually innocent" of the charged crimes. For the reasons set forth below, the decision of the Connecticut Appellate Court is not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the petitioner is not entitled to habeas corpus relief and his petition must be dismissed.

### A.   Standard Of Review

Pursuant to 28 U.S.C. § 2254(d)(1), a writ of habeas corpus "may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).[6]  The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the High Court's "decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

---

[6]   Justice O'Connor delivered the opinion of the Court with respect to Part II in which it determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) modified the role played by federal habeas courts in reviewing petitions filed by state prisoners and interpreted § 2254(d)(1).  Justice Stevens delivered the opinion of the Court with respect to Parts I, III, and IV.

A state court decision is "contrary to" clearly established Federal law if it falls within one of two scenarios.  Under the first scenario, a state-court decision will be contrary to "clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Williams*, 529 U.S. at 405, 120 S.Ct. at 1519.  As for the second scenario, the Court explained that a "state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  *Id.* at 406, 1519-20.

If a state-court decision is not "contrary to" U.S. Supreme Court precedent, the federal habeas court must determine whether the state court's decision involved an "unreasonable application" of clearly established Federal law.  In so doing, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521.  Thus, courts must apply an objective standard.  An "*unreasonable* application of federal law is different from an *incorrect* application of federal law."  Id. at 410, 1522.  "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411, 1522.

The petitioner suggests that the issues before this Court require plenary or *de novo* review.  Petitioner's memorandum at 25-26.  In support of his theory, he cites pre-AEDPA

cases[7] and cases not subject to § 2254.[8]  *Id.*  His argument is clearly wrong.  In *Williams v. Taylor*, the Supreme Court set forth the standard governing the review of state court decisions *in the context of an ineffectiveness claim*.  Thus, a federal habeas court does not apply plenary review but, rather, "should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521.

As for the factual basis of a claim, the factual findings of the state court are entitled to a presumption of correctness under 28 U.S. C. § 2254(e)(1).[9]  The "statutory presumption refers to historical facts, that is, recitals of external events and *the credibility of the witnesses* narrating them." (Citation omitted; emphasis added.)  *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997); *Green v. Scully*, 850 F.2d 894, 900 (2d Cir. 1988).  "The presumption of correctness will be set aside if the material facts were not adequately developed at the State court hearing or if

---

[7]   The Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, became effective on April 24, 1996.  The following cases cited by the petitioner, pre-date AEDPA: *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Mannhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988); and *Government of the Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984).

[8]   *Triana v. United States*, 205 F.3d 36 (2d Cir. 2000) is a case brought under 28 U.S.C. § 2255.  *United States v. Blau*, 159 F.3d 68 (2d Cir. 1998) is a *direct* appeal from a federal conviction.

[9]   Section 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

the reviewing court finds that the factual determination is not fairly supported by the record." *Smith*, 173 F.3d at 76; *Nelson*, 121 F.3d at 833.

Once this standard is applied to the claims raised by the instant petitioner, it becomes clear that federal habeas corpus relief is unwarranted and the petition must be dismissed.

### B.    The Petitioner Was Not Denied The Effective Assistance Of Counsel At His 1993 Criminal Trial

As his first claim for relief, the petitioner alleges that he was denied the effective assistance of counsel.  Specifically, he claims that his trial counsel provided inadequate assistance because he did not offer sufficient evidence of drug dependency at his 1992 criminal trial.  For the reasons discussed below, the petitioner's claim is without merit and he is not entitled to habeas corpus relief.

### 1.    The Strickland standard

There are two components to a claim of ineffective assistance of counsel.  A habeas petitioner alleging ineffectiveness must demonstrate: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  In deciding whether a petitioner has satisfied the first prong of *Strickland*, courts must decide whether counsel's performance fell below the reasonable competence exhibited by lawyers with ordinary training and skill in criminal law.  In other words, the question is whether counsel's acts or omissions were "outside the wide range of professionally competent assistance" or failed to meet "prevailing professional norms."  *Strickland*, 446 U.S. at 690, 104 S.Ct.

15

at 2066.  Flawlessness is not required.  The right to counsel is the right to effective assistance and not the right to perfect representation.

To satisfy the "prejudice" requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In other words, when a petitioner challenges his conviction on the ground of ineffective assistance of counsel, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695.

### 2.    The decisions of the state courts are not contrary to, or an unreasonable application of, *Strickland v. Washington*

At both his first and second state habeas trials, the petitioner attacked his trial attorney's failure to present additional evidence of his drug dependency.  At his second state habeas trial, the petitioner claimed that his prior *habeas* counsel was ineffective for failing to show that his *trial* counsel was ineffective for failing to offer additional evidence of drug-dependency.  Appendix F at 11-13.  To prove such a claim, a petitioner "must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. . . ."[10]  (Citation omitted; quotation marks omitted.)  *Denby*,

---

[10]    A claim involving *habeas counsel* is not cognizable in these Federal proceedings because there is no Federal constitutional right to counsel in post-conviction proceedings. Rather, the right to the assistance of counsel "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987).  For example, there is no right to counsel in pursuing a discretionary appeal to a state's highest court. *Wainwright v. Toma*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).  Likewise, the

66 Conn. App. at 812. The Connecticut Appellate Court resolved the petitioner's claim by finding that the petitioner had not established the second prong of that claim–*i.e.*, that his trial counsel was ineffective, as follows:

> The petitioner's claim of ineffective assistance of trial counsel with respect to his drug dependency founders in the face of his theory of defense at trial and his claims of actual innocence in his habeas petitions. The substance of the petitioner's habeas argument is that if his trial counsel had proved that he was drug-dependent, he would not have been convicted of violating §§ 21a-278 (b) and 21a-278a (b) and therefore he would have received a shorter sentence.
>
> The habeas court concluded that the petitioner's defense of drug dependency, if pressed at trial, would have undermined his claim of innocence. In reaching its conclusion, the habeas court noted that the petitioner testified that he abused drugs and his brother-in-law testified that they used drugs together. The habeas court also reviewed the medical records that the petitioner claimed should have been offered into evidence. The petitioner also testified that he did not sell narcotics. The court stated that "the presentation and emphasis on such evidence would likely have undercut the petitioner's primary theory of defense -- that he didn't do it. First, many of these records were generated by the department of correction as a result of screenings during prior periods of incarceration, a fact that would otherwise remain unknown to the jury. Second, the more he and his counsel chose to emphasize how much his desire for drugs controlled his actions, the less likely the jury was to believe that the petitioner would not have engaged in the crime of possession with intent to sell. Moreover, at the first habeas trial, the petitioner's trial counsel testified that he had no recollection of any discussion with the petitioner about a trial strategy that would have attacked the claim that the petitioner was not drug-dependent and admitted the difficulty of advancing such alternative defense theories simultaneously."
>
> On the basis of our review of the record and the applicable law, we agree with the reasoning of the habeas court and conclude that the petitioner has

---

Constitution does not extend the right to counsel to collateral attacks upon convictions. *Finley,* 481 U.S. at 555, 107 S.Ct. at 1993. Where no right to the assistance of counsel exists, there is no right to the effective assistance of counsel. Indeed, under 28 U.S.C. § 2254(i), the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

failed to overcome the *Strickland* prejudice prong with respect to the assistance rendered by his trial counsel.

*Denby*, 66 Conn. App. at 814-15.

As the second state habeas court found, trial counsel was faced with a client who "had a strong point of view that remained unshaken throughout his representation by [trial counsel]: the petitioner maintained that the police had set him up and that he was not guilty of the offenses charged." Appendix F at 20. This was his primary defense and trial counsel focused his energy in pursuing it. It is obvious, however, that the jury rejected the petitioner's version of the events of May 19, 1992--as well as that of his *nine* witnesses. Now that a jury has rejected his primary defense, he complains about the adequacy of his secondary defense. The petitioner's true problem is that the jury did not believe his testimony regarding *either* defense. As the second state habeas court found, "the presentation and emphasis on [drug-dependency] evidence would likely have undercut the petitioner's primary theory of defense--that he didn't do it. . . . [T]he more he and his counsel chose to emphasize how much his desire for drugs controlled his actions, the less likely the jury was to believe that the petitioner would not have engaged in the crime of possession with intent to sell." *Denby*, 66 Conn. App. at 815.

In 1992, Connecticut General Statutes § 21a-240(19), in relevant part, defined a drug-dependant person as "any person who has developed a state of psychic or physical dependence, or both, upon a controlled substance following administration of that substance upon a repeated periodic or continuous basis. . . ." "[T]he absence of drug dependency *is not an element of the offense* of sale of narcotics by a person who is not drug-dependant in violation of § 21a-278(b). Rather it is an exemption from liability under

18

§ 21a-269. . . ."[11]   (Emphasis added.)  *State v. Hart*, 221 Conn. 595, 608, 605 A.2d 1366 (1992).   Thus, the defendant bears the burden of proving drug dependency by a preponderance of the evidence.  *Id.* at 608, 612.

By raising a drug dependency defense, a criminal defendant seeks to limit his liability for a crime that he has committed.  Naturally, this course of action is inconsistent with the instant petitioner's insistence upon an innocence defense.  The raising of inconsistent defenses is permissible by law.  Nevertheless, raising inconsistent defenses may not be wise *strategically* because when a defendant raises inconsistent defenses "a jury, applying its common sense, is entitled to view with skepticism the persuasiveness of all of the defenses."  *State v. Shabazz*, 246 Conn. 746, 764 (1998).  *See also Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) quoting *United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975) (en banc) ("While we hold that a defendant may both deny the acts and other elements necessary to constitute the crime charged and at the same time claim [a defense inconsistent with his testimony], the high risks to him make it unlikely as a strategic matter that he will choose to do so. . . ."); *State v. Person*, 236 Conn. 342, 350 n.13 (1996) ("Although inconsistent defense and contradictory testimony may be proffered by a defendant, common sense instructs us that a consistent defense theory and testimony are most credible").  The pursuit of "conflicting theories" may confuse the jury and undermine whatever chance the defendant has of an acquittal.  *Turk*

---

[11]   General Statutes § 21a-269 provides that "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."

*v. White*, 116 F.3d 1264, 1266 (9th Cir. 1997). "Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance. . . ." *Jackson v. Shanks*, 143 F.3d 1313, 1320, (10th Cir. 1998).

The petitioner attempts to make much of counsel's admission that he was ignorant of the "maximum penalties of C.G.S. § 21a-278b (non-drug dependant possession) and C.G.S. § 21a-277 (drug dependent possession)." Petitioner's memorandum at 27. This argument, however, is a "red herring." Had counsel been advising the petitioner about the wisdom of taking a plea offer or whether to raise a *primary* defense of drug-dependency such information may have been vital. Here, however, the petitioner was adamant that he did not possess cocaine on the evening of May 19, 1992. Thus, counsel was "locked" into pursing this as his primary defense. Nevertheless, trial counsel did raise the issue of drug-dependency before the jury. The more evidence he presented, however, the less likely the jury would have been to believe that the petitioner was not in possession of cocaine on the evening of May 19, 1992. *See Denby*, 66 Conn. App. at 815 ("the more he and his counsel chose to emphasize how much his desire for drugs controlled his actions, the less likely the jury was to believe that the petitioner would not have engaged in the crime of possession with intent to sell"). Thus, the petitioner's insistence that there "would have been nothing inconsistent about presenting evidence of Petitioner's drug-dependancy and presenting evidence of [counsel's] 'primary strategy' of [petitioner's] not committing the crime of possession with intent to sell" is untenable. Petitioner's memorandum at 30.

For example, at the second habeas trial, the petitioner testified that on a typical day he would ingest $ 100 to $ 200 worth of cocaine. Petitioner's Exhibit 5A; T. (11/3/98) at 75-76. At the 1992 criminal trial, the petitioner claimed that he did "handy work or any kind

of work like that to get drugs but [he did] not sell drugs to maintain [his] lifestyle."    *See* Petitioner's Exhibit 1; T. (12/4/92) at 321-22, 27.  Such testimony is inconsistent with his habeas trial testimony.  No reasonable jury would believe that the petitioner could have afforded such a "habit" by working as a handyman.  He would have needed to earn between $ 36,500 ($ 100 a day of cocaine) and $ 73,000 (using $ 200 a day of cocaine) a year.  Of course, at the habeas trial, the petitioner changed his testimony on this subject. In 1998, he asserted that he would "commit crimes to get drugs" as well as use the money "my girl used to get, State money, on drugs.  We wasn't able to feed the kids and stuff." Petitioner's Exhibit 5A; T. (11/3/98) at 78-79.  *Obviously, had he testified before the jury that he would "commit crimes to get drugs" and take the money meant to feed his children,[12] he never would have convinced them that he wasn't selling drugs on May 19, 1992.*

The petitioner now complains that counsel should have presented records from the Department of Correction in support of his drug-dependency defense as well as an expert witness.  In support of his claim, he has forwarded to this Court "Exhibit 6" and "Exhibit 12" which are a "Substance Abuse Clinical Assessment Summary" dated February 4, 1993 and the Presentence Investigation report (PSI).  Both were created *after* the petitioner had testified that he was "drug-dependant" and *after* he was found guilty by the jury.  Indeed, at the second state habeas trial, the petitioner testified, "I started bolstering the drug dependency claim when I hear the prosecutor say, 'Why should you believe him if he was drug dependent?  Wouldn't he have brought in the records?'"  T. (11/3/98) at 109.

---

[12]    Stephanie Pagan testified at the second habeas hearing that she and the petitioner had five children together.  Petitioner's Exhibit 5B; T. (11/4/98) at 100.

Moreover, because they did not exist at the time of trial, counsel could not have presented them to the jury. The documents forwarded as "Exhibit 8" were produced during the period 1985-87–*i.e.*, at least five (5) years *before* the petitioner committed the charged offenses on May 19, 1992. The documents forwarded as "Exhibit 9" appear to have been made during the period 1996-98, after the petitioner was convicted and while he was seeking post-conviction relief on the ground that his counsel was ineffective for failing to present the jury with additional information of his drug dependency. As the respondent argued before the Connecticut Appellate Court, "[f]irst, the records were based significantly on the petitioner's self-reported information. Second, none of the records directly addressed the relevant time period in May 1992. Third, none of the records indicated that the petitioner had ever been hospitalized for an overdoes. Fourth, none of the records indicated that the petitioner had ever been admitted into a substance abuse facility." Appendix H at 10-11. Finally, although some of the records were generated by the Department of Correction, none indicated that the petitioner required medical treatment for the symptoms of withdrawal when incarcerated.

Likewise, the petitioner's reliance on his expert's testimony fails to establish prejudice. The "habeas court found the testimony of the petitioner's expert, Robert Sant'Angelo, wanting, concluding that Sant'Angelo's testimony at trial would have suffered the same infirmities that it had suffered during the habeas hearing. Sant'Angelo was retained after the petitioner had been arrested and charged with the crimes of which he was convicted. He never had the benefit of examining the petitioner at or near the time of the relevant events." *Denby*, 66 Conn. App. at 818.

For these reasons, the decision of the Connecticut Appellate Court was a reasonable application of *Strickland v. Washington.*  The petitioner simply cannot demonstrate that he was prejudiced by his counsel's performance.  The more the jury believed that the petitioner used drugs, the less it would have believed that he was not selling drugs on May 19, 1992.  Such a conclusion is not unreasonable.  Thus, even if this Court would have concluded differently, it cannot grant relief.  More must be shown.  Absent a demonstration that the state court determination was *unreasonable*, this Court cannot grant relief.

### C.    The Petitioner's Claim That He Is "Actually Innocent" Is Not Cognizable In This Federal Habeas Corpus Proceeding

The petitioner also claims that he is "actually innocent" of the crimes of which he was convicted.  Specifically, he alleges that:

> Petitioner was examine by drug expert who found him to be drug dependent. [D]rug records in 1977, 1983, 1986, 1987.  [T]estimony of mother of petitioner, girlfriend to petitioner testify he was drug dependent. [H]e could not be found guilty of charges.  Habeas Judge made factual finding the issue of ineffective was not squarely presented at the first Habeas hearing.

> The petitioner claims he was innocent of the crime since he was drug dependent at the time legally innocent.  Judge told jury if defendant is drug dependent he couldn't be found guilty of crime.  Expert examine petitioner and found him to be drug dependant at the time of the event in 1992.  State didn't put on expert or have petitioner examine to determine if the petitioner was not drug dependent.  Like any other mental illness expert is needed to make this determination.  Petitioner is a poor person who must rely on the State to provide expert.  State is failing to provide expert on time.

Petition [Doc. # 1] at 5-6.

In summary, he claims that "the petitioner was drug-dependant in 1992.  He is therefore innocent of the charges of which he stands convicted, since they require a showing of non-drug dependency."  Petitioner's memorandum at 38.

23

### 1.    Decision of the Connecticut Appellate Court

At his second state habeas trial, the petitioner asserted that he was actually innocent.  The second state habeas court disagreed.  The petitioner appealed that decision and the Connecticut Appellate Court resolved his claim, as follows:

> The petitioner's last claim is that the habeas court improperly concluded that he was not innocent of the crimes with which he was charged.  We do not agree.
>
> In a petition for writ of habeas corpus, "the proper standard for evaluating a freestanding claim of actual innocence, like that of the petitioner, is twofold.  First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence--both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial--he is actually innocent of the crime of which he stands convicted.  Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable factfinder would find the petitioner guilty of the crime."  *Miller v. Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997)
>
> At trial, the petitioner testified before the jury that he abused drugs.  His brother-in-law testified that he and the petitioner used drugs.  The jury, however, declined to believe that the petitioner was drug-dependent.  The issue was one of credibility.  "The credibility of a witness is for the jury to determine."  *State v. Morant*, 242 Conn. 666, 682, 701 A.2d 1 (1997).  This court does not sit as another "juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . .  Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its first hand observation of their conduct, demeanor and attitude. . . .  This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .  Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence.  The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.)  *State v. Cooper*, 65 Conn. App. 551, 557-58, 783 A.2d 100 (2001).
>
> During the habeas hearing, the habeas court found the testimony of the petitioner's expert, Robert Sant'Angelo, wanting, concluding that Sant'Angelo's testimony at trial would have suffered the same infirmities that

24

it had suffered during the habeas hearing.  Sant'Angelo was retained after the petitioner had been arrested and charged with the crimes of which he was convicted.  He never had the benefit of examining the petitioner at or near the time of the relevant events.  The petitioner therefore failed to prove by clear and convincing evidence that he was a drug-dependant individual and therefore could not have been found guilty of violating §§ 21a-278(b) and 21a-278a(b).  He also failed to establish that no reasonable fact finder would find him innocent of the crimes with which he was charged.

*Denby*, 66 Conn. App. at 817-18.

### 2. "Actual innocence" is not a cognizable claim in a federal habeas corpus proceeding

Connecticut state law recognizes free-standing claims of "actual innocence." *Summerville v. Warden*, 229 Conn. 397, 422, 641 A.2d 1356 (1994).  In resolving a claim of "actual innocence," a state habeas court must consider both the evidence produced in the original criminal trial and the evidence produced in the habeas hearing.  To prevail, a petitioner must persuade the habeas court by *clear and convincing* evidence that he is actually innocent of the crime of which he stands convicted.  In other words, the state habeas court "must be convinced of the petitioner's actual innocence to a high degree of probability, a probability substantially greater than a preponderance of the evidence, and that it must find the petitioner's claim to be highly and truly persuasive."  *Miller v. Commissioner of Correction*, 242 Conn. 745, 798, 700 A.2d 1108 (1997).  In other words, a petitioner must establish that, after considering all of the evidence and the inferences drawn therefrom, no reasonable fact finder would find him guilty.  *Id.* at 791-92.

In an action brought under 28 U.S.C. § 2254, however, a "claim based on newly discovered evidence has never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

proceeding."[13] *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). *See also Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998); *Ellis v. Collins*, 956 F.2d 76, 78 (5th Cir 1992) ("Evidence that is newly discovered does not, in itself, entitle a petitioner to federal habeas relief"). "[F]ederal habeas relief exists to correct constitutional defects, not factual errors. . . ." *Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999) citing *Herrera*, 506 U.S. at 400; *Ellis*, 956 F.2d at 78 (federal courts "are limited in habeas proceedings to assuring that the accused has been afforded the constitutional rights due him"). "In *Herrera*, the petitioner advanced his claim of innocence to support a novel substantive constitutional claim, namely, that the execution of an innocent person would violate the Eighth Amendment." *Schlup v. Delo*, 513 U.S. 298, 314, 115 S.Ct. 851, 860, 130 L.Ed.2d 808 (1995).

In federal habeas corpus proceedings, "actual innocence" is not a cognizable claim.[14] Nevertheless, it has been recognized as a *gateway* through which one may obtain

---

[13]    "Although the *Herrera* Court assumed arguendo that the *execution* of a defendant who had made a persuasive claim of actual innocence would violate the Constitution and therefore warrant federal habeas relief if no state relief proceedings were available, it stopped short of holding that such a claim exists in every case. . . ." (Citation omitted; emphasis added.) *Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999).

[14]    "This is not to say that . . . habeas jurisprudence casts a blind eye toward innocence. In a series of cases culminating with *Sawyer v. Whitley*, . . . [the Supreme Court of the United States has] held that a petitioner otherwise subject to defenses of abusive or successive use of the writ may have his federal constitutional claim considered on the merits if he makes a prior showing of actual innocence. This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons. . . . But this body of . . . habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) quoting *Herrera*, 513 U.S. at 404, 115 S.Ct. at 862.

review of a defaulted claim. Thus, if an inmate can demonstrate that he is "actually innocent," a federal habeas court will review his defaulted, constitutional claims. *See Schlup*, 513 U.S. at 315, 115 S.Ct. at 861 (""Schlup's claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' . . ." [Citations omitted]).

For example, in *Dunham v. Travis*, 313 F.3d 724 (2d Cir. 2002), the petitioner defaulted his claim that his counsel was ineffective in the state courts pursuant to an "independent and adequate" state procedural bar. It is well-established that a state prisoner who defaults his federal claim in state court pursuant to an independent and adequate state procedural rule will be denied federal habeas review absent a showing of cause for the default and actual prejudice arising therefrom or that failure to consider the federal claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed. 308 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The "fundamental miscarriage of justice" exception applies to those cases where "a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986); *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). To gain review of his ineffectiveness claim in

Federal court, the petitioner in *Dunham* claimed that he was actually innocent.

Here, the petitioner seeks review of a *substantive* claim that he is innocent because he was a "drug dependent person" at the time of the charged offenses. He does not allege innocence as a *gateway* through which he may obtain review of a defaulted claim. Because a freestanding claim of actual innocence is not cognizable in Federal habeas corpus proceedings, the petitioner fails to state a claim upon which relief may be granted. In other words, he cannot establish that the decisions of the Connecticut courts are contrary to, or an unreasonable application of, *clearly established Federal law*, as determined by the Supreme Court of the United States.

## IV.    CONCLUSION

For the reasons set forth above, the respondent respectfully requests that this Court dismiss the petition attacking the petitioner's 1993 state conviction.

Respectfully submitted,

RESPONDENT--COMMISSIONER OF
CORRECTION

By: _____
JO ANNE SULIK
Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (facsimile)
E-mail: JoAnne.Sulik@po.state.ct.us
Fed. Bar. No. ct 15122

## <u>CERTIFICATION</u>

I hereby certify that a copy of this document was mailed to Attorney William M.

Bloss, Koskoff, Koskoff & Bieder, P.C., 350 Fairfield Avenue, Bridgeport, Connecticut

06604, (203) 336-4421, (203) 368-3244 (facsimile) on May 23, 2005.


_____
JO ANNE SULIK
Assistant State's Attorney