IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

--------------------------------------------------------------x
JOHN DENBY                                        :
                                                  :          3:02 CV 1143 (JGM)
                                                  :
V.                                                :
                                                  :
COMMISSIONER OF CORRECTION        :
--------------------------------------------------------------x          DATE: AUGUST 3, 2005

_____RULING ON PETITIONER'S WRIT OF HABEAS CORPUS_____

On July 7, 2002, petitioner John Denby filed his pro se Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254. (Dkt. #1). On September 17, 2002, petitioner filed

his brief in support (Dkt. #7), and on May 16, 2003, petitioner filed his Motion to Amend the

Petition. (Dkt. #13). Twelve days later, Attorney William M. Bloss was appointed as pro

bono counsel for petitioner. (Dkt. #17. See also Dkts. ##19, 26 & 29). On April 19, 2004,

the parties consented to trial before this U.S. Magistrate Judge (Dkt. #23).

On December 7, 2004, petitioner filed a brief in support of the Petition for Writ of

Habeas Corpus, with multiple exhibits. (Dkts. ##35 & 37.[1] See also Dkts. ##24-25, 27-28,

_____

[1]Attached to Index of Exhibits (Dkt. #37) are the following: copy of trial transcript
from State v. Denby, Civ. No. CR-92-0356145 (Conn. Super. Ct.)["Criminal Trial"], held
on December 3-4, 1992 ["12/3/92 Tr.," "12/3/92 Session 2 Tr.," & "12/4/92 Tr."](Exh. 1);
copy of transcript from Denby v. Commissioner, Civ. No. 374567 (Conn. Super. Ct.
Nov. 4, 1996)["First Habeas"], held on October 24, 1996 ["10/24/96 Tr."](Exh. 2A); copy
of transcript from First Habeas, held on October 25, 1996 ["10/25/96 Tr."](Exh. 2B);
copy of Memorandum of Decision ["Second Habeas Decision"] from Denby v. Lantz,
Civ. No. CV 97-0398113; Denby v. Warden, Civ. No. CV 98-0412501; Denby v.
Tarascio, Civ. No. CV 97-0405427 (Conn. Super. Ct. Jan. 6, 2000)(Exh. 3); copy of
closing arguments and jury charge in Criminal Trial, dated December 7, 1992 (Exh. 4);
copy of transcript from Second Habeas, dated November 3, 1998 ["11/3/98 Tr."](Exh.
5A); copy of transcript from Second Habeas, dated November 4, 1998 ["11/4/98
Tr."](Exh. 5B); copy of transcript from Second Habeas, dated November 6, 1998
["11/6/98 Tr."](Exh. 5C); copy of transcript from Second Habeas, dated November 12,
1998 ["11/12/98 Tr."](Exh. 5D); copy of Walker Reception Center Addiction Services
Substance Abuse Clinical Assessment Summary ["Walker Assessment"], dated

30-36). Petitioner asserts the following constitutional errors: (1) the state court decisions that the petitioner's trial counsel was not constitutionally ineffective in failing to properly investigate and present evidence of petitioner's drug dependence defense resulted from an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984)(Dkt. #35, at 26-37); and (2) the habeas court erred in failing to find that the petitioner is actually innocent of the crimes with which he was charged. (Id. at 37-40). On May 23, 2005, respondent Commissioner of Corrections filed his Answer with an accompanying brief in opposition to the Petition for Writ of Habeas Corpus. (Dkts. ##44-45.[2] See also Dkts. ##38-41).

For the reasons stated below, petitioner's Petition for Writ of Habeas Corpus (Dkt.

_____

February 8, 1993 (Exh. 6); incomplete copy of handwritten letter and, on reverse side, copy of relevant portions of the Diagnostic and Statistical Manual of Mental Disorders](Exh. 7); copy of relevant Department of Corrections ["DOC"] documents (Diagnostic Summary Addendum, dated May 2, 1986; Interdepartmental Message from DOC to Addiction Services, dated June 8, 1986; Parole Information Form, dated April 24, 1987; DOC Referral Form, dated November 20, 1987; DOC Inmate Transfer Request Form, dated June 19, 1987; DOC Disciplinary Hearing Summary, dated January 22, 1985; Interdepartmental Message Form, dated June 22, 1987)(Exh. 8); copy of Addiction Services Unit Report, dated October 30, 1998 (Exh. 9); copy of petitioner's letter to Attorney James Shanley (Exh. 10); copy of First Habeas Decision, dated November 4, 1996 (Exh. 11)["First Habeas Decision"]; and copy of Department of Probation Pre-Sentence Investigation Report (Exh. 12).

[2]Attached to respondent's Answer are the following: copy of decision in State v. Denby, 35 Conn. App. 609 (1994)(Exh. A); copy of decision in State v. Denby, 235 Conn. 477 (1995)(Exh. B); copy of decision in Denby v. Commissioner of Correction, 47 Conn. App. 931 (App. Ct. 1998)(per curiam)["Appellate Review of First Habeas"](Exh. C); copy of record from Appellate Review of First Habeas, filed July 21, 1997 (Exh. D); copy of decision in Denby v. Commissioner of Correction, 66 Conn. App. 809 (App. Ct. 2001)["Appellate Review of Second Habeas"](Exh. E); copy of record from Appellate Review of Second Habeas, dated May 10, 2001 (Exh. F); copy of petitioner's brief from Appellate Review of Second Habeas (Exh. G); copy of respondent's brief from Appellate Review of Second Habeas, dated April 30, 2001 (Exh. H); copy of petitioner's reply brief from Appellate Review of Second Habeas, dated May 30, 2001 (Exh. I); and copy of petitioner's Petition for Certification to the Connecticut Supreme Court, with respect to Appellate Review of Second Habeas, filed November 30, 2001 (Exh. J).

#1) is <u>denied</u>.

I.  FACTUAL SUMMARY

Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  As the U.S. Supreme Court has held: "[B]asic, primary, or historical facts are the factual issues to which the statutory presumption of correctness dominantly relates." <u>Thompson v. Keohane</u>, 516 U.S. 99,110 (1995)(internal quotations & citations omitted); <u>see also Lupien v. Clarke</u>, 403 F.3d 615, 620 (8th Cir. 2005)(explaining that § 2254(e)(1) was formerly codified as § 2254(d)).   Because petitioner does not dispute the Connecticut Supreme Court's findings of fact relating to his arrest,[3] this Court adopts the Connecticut Supreme Court's recitation of the facts as set forth in <u>State v. Denby</u>, 235 Conn. 477, 479-480 (1995).

On May 17, 1992, New Haven police officer Andrew Muro and his partner Peter Carusone were working in the Newhallville section of New Haven. 235 Conn. at 479.  In response to information received from an informant that petitioner was selling drugs at 51 Lilac Street, Muro and Carusone drove by the address and saw petitioner on the front porch. <u>Id.</u>  They set up a surveillance of petitioner's activities, with Muro watching the front porch from a nearby alley and Carusone waiting at a police substation lot to assist Muro upon apprehension of petitioner.  <u>Id.</u> The Lincoln Bassett School was approximately 820 feet from

--------------------------------------------------

[3]While petitioner does not dispute the Connecticut Supreme Court's findings of fact relating to his arrest, he does dispute the determination that he was not a drug-dependent person at that time. (Dkt. #35, at 38-40).

51 Lilac Street.  Id.

Muro observed a female walk up to the porch of the building and heard her say she "wanted one." Id.  Muro then saw petitioner reach into his right pants pocket, pull out a clear plastic bag, remove an item from it, and hand it to the female, who then gave petitioner money. Id. at 479-80. Muro observed a second, similar transaction with another individual a short time later. Id. at 480.  Muro informed Carusone of his observations and the two officers returned to the premises under surveillance. Id.  Muro encountered petitioner in the hallway of 51 Lilac Street and arrested him. Id.  Muro found a clear plastic bag containing packets of white powder that field-tested positive for cocaine in petitioner's pocket. Id.

Petitioner was charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of CONN. GEN. STAT. § 21a-278(b),[4] and possession of narcotics with intent to sell within 1000 feet of a school in violation of CONN. GEN. STAT. § 21a-278a(b).[5]  235 Conn. at 478. (See also Dkt. #35, at 2-3; Dkt. #45, at 2).  Petitioner, who was represented by Attorney Donald Dakers,[6] raised two defenses at trial: first, he

_____

[4]In 1992, CONN. GEN. STAT. § 21a-278(b) carried a five-year mandatory minimum sentence, with a maximum of twenty years.  In contrast, CONN. GEN. STAT. § 21a-277, for possession of narcotics with intent to sell by a person who is drug-dependent, carried no mandatory minimum sentence, with a maximum of fifteen years.

[5]In 1992, CONN. GEN. STAT. § 21a-278a(b) only applied to defendants who were not drug-dependent and was contingent on the possession with intent charge; under § 21a-278a(c), conviction carried a mandatory three-year sentence consecutive to the sentence imposed for the § 21a-278(b) charge.

[6]Although Attorney Dakers had considerable criminal experience, at the time of this trial, he had only handled four drug cases, one of which was with petitioner, who was acquitted of the charges. (Dkt. #37, First Habeas, 10/25/96 Tr. at 23-24; Second Habeas, 11/4/98 Tr. at 60-61, 74-75, 77; Second Habeas Decision, at 5, n.2. See also Denby v. Lantz, 2000 WL 38754, at *2 n.2 (Conn. Super. Ct. Jan. 6, 2000)).

claimed that he was not in possession of any drugs on May 17, 1992,[7] and second, he claimed that he was drug-dependent.[8]  (See Dkt. #37, at 3-5; Dkt. #45, at 6-11). On December 7, 1992, petitioner was convicted on both charges and sentenced to a term of sixteen years on the § 21a-278(b) charge, plus the three mandatory consecutive years on the § 21a-278a(b) charge, for a total effective sentence of nineteen years.  235 Conn. at 478-79.  (See Dkt. #35, at 5; Dkt. #45, at 2).  The Connecticut Appellate Court upheld petitioner's conviction in his first direct appeal, State v. Denby, 35 Conn. App. 609 (App. Ct. 1994), and the Connecticut Supreme Court similarly upheld petitioner's conviction on this direct appeal. State v. Denby, 235 Conn. 477 (1995).

Petitioner filed an Amended Petition for Writ of Habeas Corpus with the Connecticut Superior Court for the Judicial District of New Haven on October 2, 1996.  (Dkt. #37, First Habeas Decision, at 1.  See also Denby v. Commissioner of Corrections, 1996 WL 661826, at *1 (Conn. Super. Ct. Nov. 5, 1996)).  Petitioner claimed that he was denied the effective

_____

[7]In support of his first claim, petitioner testified that the police entered 51 Lilac Street on the night of May 17, 1992, searched petitioner and others, and did not find drugs.  (Dkt. #37, Criminal Trial, 12/4/92 Tr. at 302-23, 327-28, 332-54).  Nine witnesses testified that they were in the same house at the time the police entered, and did not see the police find drugs on petitioner's person. These witnesses were: George Kelly (Dkt. #37, Criminal Trial, 12/3/92 Session 2 Tr. at 110-37); John Pickett (id. at 138-52); Willie Garvin (id. at 153-63, 174-81); Marquett Watson (Dkt. #37, Criminal Trial, 12/4/92 Tr. at 183-201); Walter Wilkins (id. at 201-14); Lonnie Chapman (id. at 214-29); Lester Moore (id. at 230-59); Frank Newton (id. at 262-76); and Daniel Sullivan (id. at 276-81, 283-87).

[8]In support of his second claim, petitioner testified that in May 1992, he smoked crack cocaine and marijuana on a daily basis, two to three times a day, and used "heroin[] once in a while." (Dkt. #37, Criminal Trial, 12/4/92 Tr. at 296-302).  Petitioner's brother-in-law, Willie "Chill Will" Garvin, testified that petitioner smoked crack cocaine "all the time" in May 1992, and that he and petitioner smoked crack cocaine together on multiple occasions during that period.  (Dkt. #37, Criminal Trial, 12/3/92 Session 2 Tr. at 153, 165-67).

assistance of counsel in his trial in that: (a) trial counsel failed to investigate and present evidence of the petitioner's drug dependency; and (b) trial counsel failed to object to conversations and conduct between the prosecutor and a juror, who became the foreperson, that were prejudicial to petitioner.[9]  (First Habeas Decision, at 2. See also 1996 WL 661826, at *1). At the First Habeas hearing, at which petitioner was represented by different court-appointed counsel, Attorney Dakers testified that he did not emphasize a drug dependency defense because he erroneously "believed that 277 and 278 call for the same maximum penalty," and had he known of the difference, he might have pursued a different trial strategy, including calling an expert witness on the issue of drug dependency. (Dkt. #37, First Habeas, 10/25/96 Tr. at 29-30, 36-41, 52-53; First Habeas Decision, at 2-3. See also 1996 WL 661826, at *1).  Connecticut Superior Court Judge William J. Sullivan denied the petition on November 4, 1996, holding under Strickland, petitioner "has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him." (Dkt. #37, First Habeas Decision at 5.  See also 1996 WL 661826, at *2). The Connecticut Appellate Court affirmed this decision, Denby v. Commissioner of Corrections, 47 Conn. App. 931 (App. Ct. 1998)(per curiam), and the Connecticut Supreme Court denied the certification. Denby v. Commissioner of Corrections, 244 Conn. 909 (1998).

In 1997 and 1998, petitioner initiated three additional state habeas actions in the New Haven Superior Court, for which he had new court-appointed counsel; these cases were consolidated.  (See Dkt. #35, at 7-20; Dkt. #45, at 4).  At his Second Habeas hearing,

---

[9]The juror misconduct charge was decided against petitioner in the First Habeas and was abandoned in the Second Habeas.  (Dkt. #37, First Habeas Decision, at 5-12; Dkt. #35, at 5, n.11.  See also 1996 WL 661826, at *2-6).

petitioner claimed that he was denied effective assistance of counsel at his criminal trial and at the trial of his prior habeas corpus action, and that he is innocent in fact.[10]  (See Dkt. #37, Second Habeas Decision, at 4-8.  See also Denby v. Lantz, 2000 WL 38754, at *2-4 (Conn. Super. Ct. Jan.6, 2000)).  As at the First Habeas trial, Attorney Dakers similarly testified that he did not appreciate the differences in the penalties and might have pursued a different trial strategy, including calling an expert witness on drug dependency in lieu of petitioner. (Dkt. #37, Second Habeas, 11/4/98 Tr. at 61-62, 65-66, 67, 80, 84-85; Second Habeas Decision, at 5.  See also 2000 WL 38754, at *2).  Petitioner also called Attorney Louis Avitabile as an expert witness,[11] who testified that Attorney Dakers' misunderstanding on the ramifications of sentencing fell beneath the standard of care for criminal attorneys and rose to the level of prejudice.  (Dkt. #37, Second Habeas, 11/6/98 Tr. at 15-18; Second

_____

[10]In support of his claim, petitioner alleged that his court-appointed attorney at the hearing in his first habeas action: (1) should have presented the issues related to trial counsel's advice regarding maximum penalties and regarding evidence of drug dependency in a more convincing manner; (2) should have raised and presented evidence related to a purported offer of a plea bargain; (3) should have raised and presented evidence of trial counsel's failure to present more convincing evidence of the inability of a police officer to overhear an incriminating conversation which led to the arrest and conviction of the petitioner; and (4) should have raised the failure of the petitioner to have been provided with counsel at his arraignment and pretrial.  (Dkt. #37, Second Habeas Decision at 3.  See also 2000 WL 38754, at *1).

[11]At the time of this trial, Attorney Avitabile had practiced law in Connecticut for more than thirty years, had completed almost one hundred criminal jury trials, including fifty to seventy-five cases where drug dependence was an issue, and had testified as an expert witness ten times.  (Dkt. #37, Second Habeas, 11/6/98 Tr. at 2-3, 6).

The transcript of the Second Habeas spelled counsel's last name as Avitabile (id. at 1-36), as did Judge Pittman (Dkt. #37, Second Habeas Decision, at 5; see also 2000 WL 38754, at *3) and the Connecticut Supreme Court, Denby, 244 Conn. 909 (1998).  Petitioner's brief, however, spells that last name as Avitable.  (Dkt. #35, at 18-20, 33).  This decision will follow the spelling in the Second Habeas transcript, Second Habeas Decision, and Connecticut Supreme Court decision.

Habeas Decision, at 5-6.  See also 2000 WL 38754, at *3).  On January 6, 2000, Superior

Court Judge Patty Jenkins Pittman denied these petitions, holding:

> In no one instance, nor collectively, was trial counsel's performance on petitioner's behalf so deficient as to fall below an objective standard of reasonableness. This is not to say that in all respects and with the benefit of hindsight a more convincing case on petitioner's behalf might not have been mounted.  But that is not the legal standard. Competent representation does not mean that the representation was totally without error.
>
> Nor was any imperfection in trial counsel's performance so serious as to deprive the defendant of a fair trial, a trial whose result was unreliable. The petitioner has also failed to make a showing of actual innocence.

(Dkt. #37, Second Habeas Decision at 13 (internal citations and quotations omitted).  See

also 2000 WL 38754, at *6).

The Connecticut Appellate Court affirmed this decision, Denby v. Commissioner of

Corrections, 66 Conn. App. 809, 812-15 (App. Ct. 2001), focusing on the issue of prejudice,

and the Connecticut Supreme Court again denied certification. Denby v. Commissioner of

Correction, 259 Conn. 908  (2002).

As previously mentioned, on July 7, 2002, petitioner filed his pro se Petition for Writ

of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Dkt. #1).  See also Denby v.

Commissioner of Correction, 2003 WL 21026791 (D. Conn. May 6, 2003)(Arterton,

J.,)(denying defendant's motion to stay or dismiss).


II.  DISCUSSION

A federal court can "entertain an application for a writ of habeas corpus [on] behalf

of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). The writ may be granted if the federal habeas court determines that the

state court identified the correct governing legal principle from decisions of the U.S.

Supreme Court, but "unreasonably applies [that principle] to the facts" of petitioner's case.[12]

Williams v. Taylor, 529 U.S. 362, 407 (2000).  "In order for a federal court to find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision

must have been more than incorrect or erroneous. The state court's application must have

been 'objectively unreasonable.'"  Wiggins v. Smith, 539 U.S. 510, 520-21(2003)(citations

omitted).

A. Ineffective Assistance of Counsel Claim[13]

In a long line of cases that includes Powell v. Alabama, 287 U.S. 45 (1932), Johnson

v. Zerbst, 304 U.S. 458 (1938), and Gideon v. Wainwright, 372 U.S. 335 (1963), the United

States Supreme Court has recognized the significance of the Sixth Amendment right to

counsel, which is necessary in order to protect the fundamental right to a fair trial.  See

Strickland, 466 U.S. at 684-85.  Just as the Sixth Amendment envisions counsel playing the

_____

[12]28 U.S.C. § 2254(d) provides in relevant part:

>    An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim –
>
>    (1) resulted in a decision that was contrary to, or involved an
>    unreasonable application of, clearly established Federal law, as
>    determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable
>    determination of the facts in light of the evidence presented at the
>    State court proceeding.

[13]In petitioner's original Petition, filed July 2, 2002, he also claimed ineffective
assistance of habeas counsel, which claim was abandoned in accordance with
Coleman v. Thompson, 501 U.S. 722, 755-57 (1991)(there is no right to counsel in
state collateral proceedings).  (See Dkt. #35, at 21, n.25; Dkt. #45, at 16-17, n.10).

role necessary to ensure that a trial is fair, the Supreme Court has also recognized that "the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)(multiple citations omitted).  When claiming ineffective assistance of counsel, a federal habeas petitioner must satisfy both components of the strict standard articulated by the Supreme Court in Strickland.  First, petitioner must show that "counsel's representation fell beneath an objective standard of reasonableness." 466 U.S. at 688.  Second, petitioner must demonstrate that "counsel's unprofessional errors [were] prejudicial to the defense." Id. at 692.  When evaluating such a claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696. The Supreme Court held that a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.  This ruling will address both components of the inquiry in order to thoroughly address petitioner's claims.

      1.  Strickland Analysis: Attorney Dakers' Representation Fell Below an Objective Standard of Reasonableness

The essential inquiry, when evaluating an attorney's performance under Strickland, is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. As the Supreme Court explained:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

Id. at 688-89 (citation omitted).  Under this standard, "a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. When evaluating the reasonableness of an attorney's investigations, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 690-691.

Utilizing ABA standards as a "guide[] to determining what is reasonable," the Supreme Court in Wiggins held that an attorney has an obligation to conduct a thorough investigation of the defendant's background. 539 U.S. at 523-34 (citing Strickland, 466 U.S. at 688-89).[14] See also Williams, 529 U.S. at 396 (utilizing ABA Standards to evaluate the effectiveness of counsel's investigations). While a criminal defendant may assert as many separate defenses as he has regardless of consistency, concerns about credibility and juror confusion often make it unlikely that he will do so. See Mathews v. United States, 485 U.S. 58, 64-66 (1988). "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Strickland, 466 U.S. at 693. Consequently, when evaluating an attorney's decision not to pursue a defense or present evidence, the essential question is not whether counsel should have presented the evidence, but "whether the investigation supporting the decision not to introduce . . .

---

[14]ABA Standards for Criminal Justice 4-4.1. (3d ed. 1993) DUTY TO INVESTIGATE. (a) Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

evidence <u>was itself reasonable</u>."    <u>See Wiggins</u>, 539 U.S. at 522-23 (citation omitted)(emphasis in original).

As previously indicated, at the Second Habeas hearing, Attorney Louis Avitabile testified as an expert witness for petitioner on the standard of care for criminal attorneys. (<u>See</u> Dkt. #37, Second Habeas, 11/6/98 Tr. at 2-36).  Much of his testimony focused specifically on professional standards in cases where drug-dependency is an issue. Attorney Avitabile testified that when there is a claim of drug-dependency, it is proper to investigate and secure any available records on this issue. (<u>Id.</u> at 6-10).  He also testified that attorneys should have their clients examined by an expert -- either a doctor or a substance abuse counselor -- in order to obtain a professional expert opinion on the issue of drug-dependence.  (<u>Id.</u> at 8-10).  Attorney Avitabile acknowledged that producing an expert opinion at trial would be more advantageous than presenting drug-dependency through a defendant's testimony, as expert testimony tends to carry more weight with a jury. (<u>Id.</u> at 8-9).  According to Attorney Avitabile, when an attorney's investigations indicate that his or her client is drug-dependent, and an expert is available to testify to drug-dependence, "then obviously it would not be a sound tactic to abandon that if it is going to mean something as far as the trial."  (<u>Id.</u> at 9). Attorney Avitabile identified Attorney Dakers' error as having failed to investigate petitioner's drug dependency, based upon Attorney Dakers' erroneous conclusion that there was no difference in the penalties under CONN. GEN. STAT. §§ 21a-278b and -277, and that it would have been "important" to "[a]t least investigate and find out whether there is a legitimate claim of drug dependency or not."  (<u>Id.</u> at 10-15). Attorney Avitabile also testified that a failure to produce records or an expert witness based on an erroneous understanding of maximum punishments would be below the standard of care for criminal attorneys. (<u>Id.</u> at 16).

Other than the testimony of petitioner and of his brother-in-law Willie Garvin, Attorney Dakers presented no evidence at trial in support of petitioner's alternative defense of drug-dependence. That decision was not the result of a reasoned tactical decision. Rather, it was a consequence of Attorney Dakers' "erroneous" belief that CONN. GEN. STAT. §§ 21a-277 and 21a-278[15] called for the same maximum penalty, and his admission that his trial strategy "might have been different" had he known the difference, including calling an expert witness to testify on the issue of drug dependency instead of petitioner. (Dkt. #37, First Habeas, 10/25/96 Tr. at 29-30, 36-41, 52-53; Second Habeas, 11/4/98 Tr. at 61-62, 65-66, 67, 80, 84-85).[16] Despite petitioner's acknowledgment that there were available records regarding his drug-dependency, Attorney Dakers never obtained those records or offered them into evidence. (See Dkt. #37, Second Habeas, 11/4/98 Tr. at 64-65).[17] If Attorney Dakers had been able to call an expert to the stand during the Criminal Trial, he would not

―――――――――――――――――

[15]See note 4 supra.

[16]Respondent contends that Attorney Dakers' admission is a "red herring" because petitioner was "adamant" that his primary defense was that he did not possess cocaine on the evening of May 19, 1992. (Dkt. #45, at 20). "Had counsel been advising petitioner about the wisdom of taking a plea offer or whether to raise a primary defense of drug-dependency[,] such information may have been vital." (Id.)(emphasis in original). Rather, the more evidence defense counsel presented about drug dependency, "the less likely the jury would have been to believe petitioner was not in possession of cocaine on the evening of May 19, 1992." (Id.).

[17]The following DOC documents contained information regarding petitioner's drug use and were available to Dakers had he requested them for trial: a DOC Diagnostic Summary Addendum, dated May 2, 1986, including information regarding petitioner's drug use while in prison and his interest in the prison Substance Abuse Treatment Program; Interdepartmental Message from DOC to Addiction Services, dated June 8, 1986; a Parole Information Form, dated April 24, 1987 including information regarding petitioner's participation in a drug rehabilitation program; and a DOC Disciplinary Hearing Summary, dated January 22, 1985. (See Dkt. #37, Exh. 8). The Walker Assessment, a substance abuse assessment from 1993, was also available. (See Dkt. #37, Exh. 6, Walker Assessment).

have had to rely on petitioner's testimony. (See id. at 67). Although petitioner's girlfriend Stephanie Pagan and his mother Geraldine Denby were available to testify as to petitioner's drug abuse at the time of the alleged crimes, Attorney Dakers did not call them to the stand. (See Dkt. #37, Second Habeas, 11/4/98 Tr. at 96-97, 111).

Attorney Dakers' decision not to further investigate and introduce this evidence was not the result of a "reasonable investigation[] or . . .a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Rather it "betray[ed] a startling ignorance of the law," that falls outside the wide range of reasonable professional assistance. Kimmelman v. Morrison, 477 U.S. 365, 385 (1986). Failure to present evidence that could significantly reduce sentence exposure "does not reflect a strategic decision, but rather an abdication of advocacy." Austin v. Bell, 126 F.3d 843, 849 (6th Cir. 1997), cert. denied, 523 U.S. 1079 & 1088 (1998). In the context of the decision to pursue petitioner's alternative defense, Attorney Dakers' failure to investigate and present the available drug-dependency evidence was contrary to prevailing professional norms. In light of the foregoing, this Court finds that Attorney Dakers representation fell below an objective standard of reasonableness, a contention with which Attorney Dakers concurred at the First and Second Habeas trials.

### 2. Strickland Analysis: No Reasonable Probability that Attorney Dakers' Unprofessional Errors Prejudiced Petitioner's Defense

The U.S. Supreme Court held in Strickland that any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution, with the burden placed upon the petitioner. 466 U.S. at 692-93. The Supreme Court acknowledged that this consideration must be made on a case-by-case basis:

Attorney errors come in an infinite variety and are as likely to be utterly

-14-

harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

Id. at 693.   The Supreme Court continued:

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

Id. (citation omitted). The Supreme Court instead adopted the following test for prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Supreme Court advised that "[i]n making the determination whether the specified errors resulted in the required prejudice, [the reviewing] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." Id. at 695.   The reviewing court is to consider "the totality of the evidence before the judge or jury," distinguishing between errors that "had a pervasive effect" and those that "had an isolated, trivial effect," so that "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id. at 695-96. The Supreme Court concluded that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged," and "despite the strong presumption of reliability," "the court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system

counts on to produce just results." Id. at 696.

The Supreme Court has held that "any amount of actual jail time has Sixth Amendment significance"; any additional jail time can constitute prejudice. See Glover v. United States, 531 U.S. 198, 203 (2001)(citations omitted).

"[T]he absence of drug dependency is not an element of the offense of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278(b)." State v. Hart, 221 Conn. 595, 608 (1992). It is an exemption from liability under § 21a-269.[18] Id. "Therefore, it was not necessary for the state to negate drug dependency, but, rather, the defendant had the burden of proving that [he] was drug-dependent" by a preponderance of the evidence. See id. at 608-09. Whether a criminal defendant has satisfied that burden is a question for the jury, as "[i]t is without question that the jury is the ultimate arbiter of fact and credibility." Id. at 604 (citation omitted).

While it is possible that a jury would have found petitioner to be drug-dependent absent Attorney Dakers' unprofessional errors, that possibility is insufficient to meet the "reasonable probability" bar established by the Supreme Court in Strickland, 466 U.S. at 694. Based on the outcome in the underlying trial, the jury did not believe the testimony of petitioner and of his brother-in-law, Willie Garvin, regarding petitioner's drug-dependency at trial. (See Dkt. #37, Criminal Trial, 12/4/92 Tr. at 296-302; 12/3/92 Session 2 Tr. at 153, 165-67). There is nothing on the record to indicate that the jury would have found

---

[18]CONN. GEN. STAT. § 21a-269 provides:

In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant.

petitioner's girlfriend's and mother's testimony more convincing.  Moreover, neither the DOC records or the expert testimony of licensed drug counselor Robert Sant'Angelo at the Second Habeas trial are dispositive on the issue of drug dependency.  As the respondent argued before the Connecticut Appellate Court with respect to the DOC records:

> First, the records were based significantly on the petitioner's self-reported information.  Second, none of the records directly addressed the relevant time period in May, 1992.  Third, none of the records indicated that the petitioner had ever been hospitalized for an overdose.  Fourth, none of the records indicated that the petitioner had ever been admitted to a substance abuse facility.

(Dkt. #45, Exh. H, at 10-11.  See also Denby, 66 Conn. App. at 809-10).  While Sant'Angelo concluded that petitioner was drug-dependent in 1992, he did not first interview petitioner until 1998, six years after the alleged crime.  (Dkt. #37, Second Habeas, 11/4/98 Tr. at 7-8, 31, 40).  Although his evaluation was based largely on the February 1993 Walker Assessment, that assessment took place nine months after the alleged offenses.  (Id. at 8-10, 43-45; Dkt. #37, Exh. 6, Walker Assessment).  Therefore, there is nothing in the present record to establish that petitioner was drug-dependent as of May 1992, other than petitioner's testimony and that of his brother-in-law, Willie Garvin, at the Criminal Trial, and petitioner's testimony and that of his girlfriend, Stephanie Pagan, and of his mother, Geraldine Denby, at the Second Habeas, that in 1992 he was abusing cocaine and marijuana on a daily basis.  (Dkt. #37, Criminal Trial, 12/4/92 Tr. at 296-302; Criminal Trial, 12/3/92 Tr. at 153, 165-67; Second Habeas, 11/3/98 Tr. at 75-76; 11/4/98 Tr. at 94, 109-10).[19]  Even absent Attorney Dakers' unprofessional assistance, the jury would have had to draw numerous inferences in favor of petitioner in order to find him drug-dependent by a

---

[19]Petitioner testified that he spent between $100 and $500 a day on drugs, which included ten to twenty pipefuls of crack cocaine and two to three bags of marijuana a day.  (Second Habeas, 11/3/98 Tr. at 75-76).

preponderance of the evidence. Given the deficiencies with the foregoing evidence, this Court cannot say that under the prejudice standard established in Strickland, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," "that the decision reached would reasonably likely have been different absent the errors," that "the fundamental fairness" of the process is in question, and that "the result . . . is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." 466 U.S. at 694 & 696. See also Wiggins, 539 U.S. at 536.

> Moreover, the prejudice identified by Attorney Avitabile was
>
> the fact that there was a trial. I think that if he had done the proper investigation and had the records and he had an expert prepared to testify, the State might not have pursued it under [§ 21a-]278b and may have allowed a plea agreement on [§ 21a-]277. So that, there may have been a different outcome as far as the fact there may not have been a trial.

(Dkt. #37, Second Habeas, 11/6/98 Tr. at 17). Attorney Avitabile conceded on cross-examination that if a criminal defendant refuses to plead guilty, insists upon going to trial, and rejects a defense suggested by counsel, an attorney "can't force" the client into a trial strategy the client disavows. (Id. at 24-27). Attorney Dakers testified at the Second Habeas that petitioner "was adamant about going to trial, adamant that his [F]ourth [A]mendment rights had been violated and that the police were lying. So, I don't remember any . . . numbers being discussed with me by anybody." (Dkt. #37, Second Habeas, 11/4/98 Tr. at 66-67. See also id. at 76-77, 78, 84; Second Habeas Decision, at 8; 2000 WL 38754, at *4).[20] In light of petitioner's desire to go to trial and in absence of a plea offer extended by

---

[20]Although petitioner's testimony is not particularly clear, it appears that a plea bargain had been offered to petitioner on this case through his counsel on another criminal charge, Attorney Richard Silverstein, and that petitioner rejected such offer. (Dkt. #37, Second Habeas, 11/3/98 Tr. at 69-70). Petitioner added that had he known

the prosecutor to Attorney Dakers, there was no opportunity to avoid trial.

For the foregoing reasons, this Court does not find that petitioner suffered prejudice as a result of Attorney Dakers' unprofessional assistance.

B. Actual Innocence Claim

According to petitioner, because he was drug dependent in 1992, he is innocent of the charges of which he stands convicted.  (Dkt. #35, at 37-40).  Thus, petitioner contends that the Second Habeas court's conclusion that there was no showing of actual innocence at the Second Habeas is erroneous.  (Id.).

A freestanding claim of actual innocence is not a cognizable claim in a federal habeas corpus proceeding.[21]  See Herrera v. Collins, 506 U.S. 390, 400 (1993).  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  Id. (citation omitted).  "Federal habeas review of state criminal convictions has traditionally been limited

--------------------------

his exposure was twenty-three years, instead of fifteen years, he "would have taken the offer." (Id. at 68-69).  Attorney Silverstein testified that the offer had come from the Superior Court Judge, not the prosecutor.  (Id. at 56-57, 59, 60-61.  See also Second Habeas Decision, at 8-9; 2000 WL 38754, at *4).

[21]A freestanding claim of actual innocence is, however, a cognizable claim in a Connecticut state habeas corpus proceeding.  See Miller v. Commissioner of Correction, 242 Conn. 745 (1997).  The Connecticut Supreme Court has held that a petitioner must persuade the state habeas court by clear and convincing evidence that the petitioner is actually innocent of the crime of which he stands convicted.  See id. at 791.  The petitioner must also establish that no reasonable fact finder would find the petitioner guilty.  See id. at 791-92.  In affirming the Second Habeas decision in this case, the Connecticut Appellate Court pointed out that, considering the deficiencies in the newly discovered evidence, the jury would still have had to draw several inferences in favor of the petitioner in order to find him drug dependent by a preponderance of the evidence.  See Denby, 66 Conn. App. at 817-18.  Consequently, the court reasonably concluded that petitioner had failed to establish that no reasonable fact finder would find him innocent of the crimes with which he was charged.  See id. at 818.

-19-

to claims of constitutional violations occurring in the course of the underlying state criminal proceedings." Id. at 416. A claim of "actual innocence" is not itself a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404.[22] Accordingly, in Schlup v. Delo, 513 U.S. 298, 317 (1995), the Supreme Court held that the petitioner could use his threshold showing of innocence to justify a review of the merits of his procedurally barred constitutional claims.[23]

Here petitioner seeks review of a substantive claim of actual innocence based on his contention that he was a drug dependent person at the time of the charged offenses. (See Dkt. #35, at 37-40). Because a freestanding claim of actual innocence is not a cognizable claim in federal habeas corpus proceedings, petitioner has failed to state a claim upon which relief can be granted and this Court need not address the merits of this claim.

## III. CONCLUSION

Accordingly, for the reasons stated above, petitioner's Petition for Writ of Habeas

---

[22]The fundamental "miscarriage of justice" exception is available "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Id. (emphasis in original)(citation omitted). The Supreme Court has never held "that it extends to freestanding claims of actual innocence. Therefore, the exception is inapplicable here." Id. at 404-05. See also Sawyer v. Whitley, 505 U.S. 333, 339 (1992).

[23]In his original habeas action, petitioner Lloyd Schlup had sought review of his petition for writ of habeas corpus, asserting the claim that he was denied the effective assistance of counsel. Schlup, 513 U.S. at 306. The District Court concluded that Schlup's claim was procedurally barred, and consequently denied relief. Id. The Supreme Court held that Schlup's claim of actual innocence in his subsequent Federal habeas action could serve as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 315 (internal citations omitted).

Corpus (Dkt. #1) is <u>denied</u>.[24]

     SO ORDERED at New Haven, Connecticut, this 3rd day of August, 2005.


_____/s/_____
Joan Glazer Margolis
U.S. Magistrate Judge

---

[24]The Magistrate Judge commends Attorney William Bloss and Assistant State's Attorney Jo Anne Sulik for the high quality of their written submissions.